UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------- X

CRAIG M. WALKER, On Behalf of the 401k Plan, :
Himself and All Others Similarly Situated,
:
                              Plaintiff,          :      No. 1:15-cv-01959 (PGG)
:
           - vs. -                                :
:
MERRILL LYNCH & CO. INC., BANK OF AMERICA         :
CORPORATION,
:
                              Defendants.         :
----------------------------------------------------------------------- X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION <u>TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS</u>

Andrew W. Stern
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
astern@sidley.com

Anne E. Rea (*admitted pro hac vice*)
Eric S. Mattson (*admitted pro hac vice*)
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, Illinois 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
area@sidley.com
emattson@sidley.com

*Attorneys for Defendants Bank of America*
*Corporation and Merrill Lynch & Co., Inc.*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ...................................................................................3

ARGUMENT ......................................................................................................4

I.  PLAINTIFF HAS NOT PLEADED A PLAUSIBLE CLAIM............................4

    A.  Plaintiff Has Not Plausibly Alleged That Merrill Lynch Acted as a Fiduciary Under ERISA.................................................................5

        1.  Assessing pre-approved fees is not a fiduciary act. ...................................5

        2.  Providing ministerial services is not a fiduciary act. ................................6

        3.  Plaintiff has not plausibly alleged that any fees were "excessive."............9

    B.  The Sherman Act Claim Should Be Dismissed Because Plaintiff Has Not Plausibly Alleged Market Power in a Relevant Market, Coercive Acts, or Harm to Competition. ............................................................9

    C.  ERISA Completely Preempts the State Law Claim.................................14

II.  PLAINTIFF'S CLAIMS ARE LARGELY TIME-BARRED............................15

    A.  The ERISA Claim Is Time-Barred. ....................................................15

    B.  The Sherman Act Bars Any Tying Claim That Accrued Prior To March 16, 2011..................................................................................16

    C.  The New York General Business Law Claim Is Time-Barred. .............17

III.  PLAINTIFF CANNOT SERVE AS CLASS REPRESENTATIVE AND AS CLASS COUNSEL...................................................................................17

CONCLUSION..................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Dairy Farmers of Am., Inc.*,
   748 F. Supp. 2d 323 (D. Vt. 2010)......................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................................5, 8, 9, 12

*Atlantic Richfield Co. v. USA Petroleum Co.*,
   495 U.S. 328 (1990)....................................................................................13

*Balaklaw v. Lovell*,
   14 F.3d 793 (2d Cir. 1994).............................................................................13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................4, 9, 10, 12

*Brunswick Corp. v. Pueblo Bowl-OMat, Inc.*,
   429 U.S. 477 (1977).....................................................................................12

*Carey v. IBEW Local 363 Pension Plan*,
   201 F.3d 44 (2d Cir. 1999).............................................................................15

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
   474 F.3d 463 (7th Cir. 2007) ...........................................................................5

*Concord Assocs., L.P. v. Entm't Properties Trust*,
   No. 12 CIV. 1667 ER, 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014).....................................13

*Costa v. Astoria Fed. Sav. & Loan Ass'n*,
   995 F. Supp. 2d 146 (E.D.N.Y. 2014) .................................................................14

*De Jesus v. Sears, Roebuck & Co.*,
   87 F.3d 65 (2d Cir. 1996) ..............................................................................10

*In re Digital Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011)....................................................................1

*Downes v. JP Morgan Chase & Co.*,
   No. 03 CIV.8991(GEL), 2004 WL 1277991 (S.D.N.Y. June 8, 2004) ...................................15

*E & L Consulting, Ltd. v. Doman Indus. Ltd.*,
   472 F.3d 23 (2d Cir. 2006)..............................................................................12

*F.W. Webb Co. v. State St. Bank & Trust Co.*,
   No. 09-1241, 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010)....................................................5

*Floors-N-More, Inc. v. Freight Liquidators*,
   142 F. Supp. 2d 496 (S.D.N.Y. 2001) ...................................................................................13

*Frangipani v. HBO*,
   No. 08 CIV. 5675 (GBD), 2010 WL 1253609 (S.D.N.Y. Mar. 16, 2010) .............................13

*Gaidon v. Guardian Life Ins. Co.*,
   96 N.Y.2d 201 (2001) ...........................................................................................................17

*Global Network Commc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006)....................................................................................................3

*Gruby v. Brady*,
   838 F. Supp. 820 (S.D.N.Y. 1993).........................................................................................7

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
   302 F.3d 18 (2d Cir. 2002)......................................................................................................5

*Hecker v. Deere & Co.*,
   556 F.3d 575, *reh'g denied*, 569 F.3d 708 (7th Cir. 2009)..........................................6, 7, 8, 9

*Jaffe v. Capital One Bank*,
   No. 09 CIV 4106 (PGG), 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010)........................2, 17, 18

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984), *abrogated on other
   grounds, Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006).................10, 11, 12

*Ladino v. Bank of Am.*,
   861 N.Y.S.2d 683 (N.Y. App. Div. 2008) ............................................................................14

*Leimkuehler v. American United Life Ins. Co.*,
   713 F.3d 905 (7th Cir. 2013) ...........................................................................................6, 7, 8

*New York v. Hendrickson Bros.*,
   840 F.2d 1065 (2d Cir. 1988).........................................................................................16, 17

*Northern Pac. Ry. Co. v. U.S.*,
   356 U.S. 1 (1958)..................................................................................................................10

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   85 N.Y.2d 20 (1995) .............................................................................................................15

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)............................................................................................................1, 5

*Pilot Life Ins. Co. v. Dedeaux*,
   481 U.S. 41 (1987)................................................................................................................14

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011)...................................................................7, 8

*Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*,
   768 F.3d 284 (3d Cir. 2014)...............................................................6, 7, 8

*TechReserves Inc. v. Delta Controls Inc.*,
   No. 13 CIV. 752 GBD, 2014 WL 1325914 (S.D.N.Y. Mar. 31, 2014)...........11, 13

*Tibble v. Edison Int'l*,
   No. 13-550, 2015 WL 2340845 (U.S. May 18, 2015).............................15

*Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health &
   Welfare Plan v. Bjorkedal*,
   516 F.3d 719 (8th Cir. 2008) ...........................................................7

*U.S. Steel Corp. v. Fortner Enters., Inc.*,
   429 U.S. 610 (1977)....................................................................2, 11

*United Magazine Co. v. Murdoch Magazines Distribution, Inc.*,
   146 F. Supp. 2d 385 (S.D.N.Y. 2001), *aff'd sub nom, United Magazine Co. v.
   Curtis Circulation Co.*, 279 F. App'x 14 (2d Cir. 2008) ....................14

*Vincent v. Money Store*,
   304 F.R.D. 446 (S.D.N.Y. 2015) ......................................................17

*In re Wireless Tel. Servs. Antitrust Litig.*,
   385 F. Supp. 2d 403 (S.D.N.Y. 2005)...............................................10, 12, 13

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
   550 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd on other grounds*, 325 F. App'x
   31 (2d Cir. 2009)....................................................................15, 16

*Young v. General Motors Inv. Mgmt. Corp.*,
   325 F. App'x 31 (2d Cir. 2009) ......................................................9

*Zang v. Paychex, Inc.*,
   728 F. Supp. 2d 261 (W.D.N.Y. 2010) ..............................................5

**Statutes**

15 U.S.C. § 15b...................................................................................16

29 U.S.C. § 1002(21)(A)....................................................................5, 7

29 U.S.C. § 1002(21)(A)(ii)................................................................8

29 U.S.C. § 1113.................................................................................15

29 U.S.C. § 1144(a) ...........................................................................14

Investment Company Act, 15 U.S.C. §§ 80a-1 *et seq.*. ...................................................9

N.Y. General Business Law § 349...........................................................................2, 14, 17

Donnelly Act, N.Y. General Business Law §§ 340 *et seq.*..........................................14

Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.* ........................................................1, 2

**Other Authorities**

29 C.F.R. § 2510.3-21(c) .............................................................................................9

80 Fed. Reg. 21928 (Apr. 20, 2015) ........................................................................8, 9

New York Civil Practice Law and Rules 214(2) .......................................................17

Federal Rule of Civil Procedure 12(b)(6) ...................................................................1

Federal Rule of Civil Procedure 23(d)(1)(D)......................................................1, 17

Defendants Bank of America Corporation and Merrill Lynch & Co., Inc.[1] submit this

memorandum in support of their motion to dismiss Plaintiff Craig M. Walker's putative class

action complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)

or, in the alternative, to strike the class allegations pursuant to Federal Rule of Civil Procedure

23(d)(1)(D).

## PRELIMINARY STATEMENT

This lawsuit was brought by an unhappy retirement plan investor, a former partner at one

of the largest law firms in the world, Clifford Chance. It features one ERISA claim and two

tacked-on claims, one under the Sherman Antitrust Act and one under state law. All three claims

involve Plaintiff's dissatisfaction with the fees associated with the Clifford Chance 401(k) plan.

As explained below, none of Plaintiff's theories state a plausible claim against Merrill Lynch, the

record-keeper and ministerial service provider to the plan; all three are barred at least in part by

the applicable statute of limitations; and in any event Plaintiff's class allegations should be

stricken because Plaintiff cannot serve as both the putative class representative and class counsel.

Plaintiff's ERISA claim — the heart of the case — requires Plaintiff to allege that Merrill

Lynch acted as an ERISA fiduciary "when taking the action subject to complaint." *Pegram v.*

*Herdrich*, 530 U.S. 211, 226 (2000). The "action subject to complaint" here is Merrill Lynch's

collection of fees for its provision of record-keeping and other services to the 401(k) plan of

Plaintiff's former employer (Clifford Chance US LLP) — fees that the Clifford Chance plan's

---

[1] Merrill Lynch & Co., Inc. merged into Bank of America Corporation, effective October 1, 2013. *See* Corporate Disclosure Statement, Dkt. 5. A non-defendant subsidiary, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), is the actual service provider to Plaintiff's 401(k) plan. In addition to the other grounds set forth in this brief for dismissal of the claims even if Plaintiff *had* sued the correct entity, Plaintiff has alleged no basis for suing the parent companies. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417-18 (S.D.N.Y. 2011) (quoting *United States v. Bestfoods,* 524 U.S. 51, 61 (1998)).

1

fiduciary authorized in its contract with Merrill Lynch. In collecting these fees, Merrill Lynch was not acting as a fiduciary under ERISA; it was charging fees the fiduciary of the plan explicitly authorized. Absent plausible allegations of fiduciary status against Merrill Lynch, Plaintiff has no ERISA claim.

Plaintiff's "tying" claim under the Sherman Antitrust Act is no more plausible. This claim is based on the assertion that Merrill Lynch somehow required the 401(k) plan to include Merrill Lynch investment options in its offerings to plan participants. But a tying claim requires Plaintiff to allege and prove that Merrill Lynch wielded market power in the 401(k) plan services market that enabled it to coerce the plan sponsor into offering Merrill Lynch funds. *See U.S. Steel Corp. v. Fortner Enters., Inc.*, 429 U.S. 610, 620 (1977). No such allegation appears in the Complaint, nor could it. What's more, Plaintiff has alleged no adverse effects to competition in the investment or mutual fund market and, therefore, no antitrust injury.

Finally, Plaintiff's half-hearted assertion of a claim under N.Y. General Business Law § 349 is preempted by ERISA and does not state a plausible claim in any event.

In the alternative, Plaintiff cannot prosecute this case as a class action because he is proceeding as his own attorney. Plaintiff purports to bring the action on behalf of himself, the Clifford Chance 401(k) plan, and thousands of other 401(k) plans and plan participants, and further purports to act as counsel for all of those individuals and entities. But a *pro se* plaintiff may not represent absent class members because, as this Court and many others have held, he has an impermissible conflict of interest. *Jaffe v. Capital One Bank*, No. 09 CIV 4106 (PGG), 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010). Thus, if the claims are not dismissed in their entirety, the class allegations should be stricken.

## STATEMENT OF FACTS[2]

Plaintiff is an attorney who was a litigation partner at Rogers & Wells LLP, a law firm that became Clifford Chance US LLP after a merger. After his departure from his law firm, Plaintiff remained a participant in the Clifford Chance US LLP 401(k) Plan ("Clifford Chance Plan"). Compl. ¶¶ 6, 34. Plaintiff alleges that Merrill Lynch, the administrative service provider to the plan, breached fiduciary duties under ERISA by charging excessive fees. *Id.* ¶¶ 130, 147-50.

Merrill Lynch does not serve as the plan administrator, sponsor, or named fiduciary of the Clifford Chance Plan. *See id.* ¶¶ 5, 21-23. The agreement between Clifford Chance and Merrill Lynch designates Clifford Chance as the Employer, Plan Fiduciary, Named Administrative Fiduciary, and Named Investment Fiduciary. Stern Decl. Ex. A at A1. Clifford Chance retained Merrill Lynch "to perform certain non-discretionary, ministerial administrative recordkeeping services" relating to the Clifford Chance Plan. *Id.* In their agreement, Merrill Lynch and Clifford Chance acknowledged that "the Plan Fiduciary, and any other fiduciary it may properly appoint (*which cannot be Merrill Lynch*)," exercised fiduciary judgment and discretion in "choosing the investment options offered in the plan." *Id.* at A2 (emphasis added). Merrill Lynch did not agree to act as a fiduciary to the Clifford Chance Plan with responsibility for investment decisions, *id.*, and Plaintiff has pled no facts suggesting that it did.

Instead, Plaintiff generally alleges that Merrill Lynch served as the "record-keeper/administrator, investment advisor, and plan menu provider" of the Clifford Chance Plan

---

[2] These facts are drawn from the Complaint and are assumed to be true solely for purposes of this motion. In addition, the accompanying Declaration of Andrew W. Stern, dated May 20, 2015 ("Stern Decl."), attaches documents referenced in the Complaint. Courts may rely on documents integral to the complaint if plaintiff relied on "the terms and effect of [the] document in drafting the complaint." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006).

and in one or another of these roles offered mutual fund choices with "higher fee cost." Compl. ¶ 35. Specifically, Plaintiff alleges that Merrill Lynch did not provide a slate of investment options that included enough funds with low fees, that Merrill Lynch offered its own funds through 2006 with supposedly "excessive fees," and that Merrill Lynch offered other funds with fees that were too high and not adequately disclosed. *Id.* ¶¶ 38-41, 150-52, 162-85. However, the Complaint does not allege any facts to support a conclusion that Merrill Lynch ever provided investment advice, and even Plaintiff's conclusory allegation says Merrill Lynch provided such advice only until 2006. *Id.* ¶ 1. Rather, Plaintiff alleges that Merrill Lynch provided an overall slate of funds and that the "Plan's Trustees or Investment Advisor" selected the funds to place on a menu from which participants (such as Plaintiff) could choose. *Id.* ¶¶ 148-49, 177.

In 2012, before filing this lawsuit, Plaintiff brought an administrative claim against Clifford Chance (but not Merrill Lynch) challenging *Clifford Chance's* selection of funds and the associated fees. *Id.* ¶ 22. Plaintiff's claim was denied in March 2013, and his administrative appeal was denied in August 2013. *Id.* ¶¶ 26-30. Nearly two years later, Plaintiff filed this action against Merrill Lynch.

<u>**ARGUMENT**</u>

## I.      PLAINTIFF HAS NOT PLEADED A PLAUSIBLE CLAIM.

Federal pleading standards are intended to prevent a plaintiff with a "largely groundless claim" from forcing defendants into either costly discovery or a settlement of a weak claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations that are merely "consistent with" liability will not suffice. *Id.*

### A.   Plaintiff Has Not Plausibly Alleged That Merrill Lynch Acted as a Fiduciary Under ERISA.

For the ERISA claim, the threshold issue is whether Merrill Lynch acted as a fiduciary in any relevant respect. *Pegram*, 530 U.S. at 226. While Plaintiff's Complaint includes an extended discussion about mutual fund fees in general, it includes no facts plausibly suggesting that Merrill Lynch acted as a fiduciary with respect to those fees. This is so for two reasons: first, because offering mutual funds that charge fees authorized by contract is not a fiduciary act; and second, because Merrill Lynch's provision of ministerial services to the Clifford Chance Plan does not satisfy ERISA's definition of "fiduciary," 29 U.S.C. §1002(21)(A). In addition, Plaintiff has failed to allege facts showing that the fees were excessive relative to the services Merrill Lynch provided.

### 1.   Assessing pre-approved fees is not a fiduciary act.

A service provider neither acts as a fiduciary nor breaches any duty when it charges fees approved by a plan administrator. *See, e.g.*, *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 31 (2d Cir. 2002) (reversing finding that insurance company's "collection of its agreed-upon compensation under the Contract was a breach of its fiduciary duties"); *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 473 (7th Cir. 2007) ("Given that this [pricing] scheme was the very deal for which [plaintiff] bargained at arms' length, [defendant] owed no fiduciary duty in this regard.").

The same principle applies to "revenue sharing," a well-established feature in the 401(k) industry whereby mutual fund companies compensate administrative service providers such as Merrill Lynch. *See Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 264, 271 (W.D.N.Y. 2010) (granting motion to dismiss because service provider was not an ERISA fiduciary); *F.W. Webb*

*Co. v. State St. Bank & Trust Co.*, No. 09-1241, 2010 WL 3219284, at *5-7 (S.D.N.Y. Aug. 12, 2010) (holding that service provider's offering of investment options and receipt of revenue sharing did not establish fiduciary status); *Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905, 911-12 (7th Cir. 2013) (affirming summary judgment in favor of service provider because it was not acting as an ERISA fiduciary when it received revenue sharing).

Providing services and charging fees approved by a plan fiduciary is all that is alleged to have happened here. The contract between Clifford Chance and Merrill Lynch explained how Merrill Lynch would be paid for its services, including through revenue sharing from mutual fund companies. "When your plan invests in mutual funds and collective trust funds, we receive compensation from the fund provider based on that investment . . . [which] allows us to offer our services at a reasonable cost." Stern Decl. Ex. B at I1. The contract went on to explain the different fees and how Merrill Lynch would receive compensation from those fees; it also provided a sample expense ratio structure as it would apply to different classes of mutual fund shares. *Id.* at I2. There is no hint of fiduciary conduct, much less plausible factual allegations about it. As the Third Circuit held in the most recent Court of Appeals decision to address the alleged fiduciary status of a 401(k) service provider, "a service provider owes no fiduciary duty to a plan with respect to the terms of its service agreement if the plan trustee exercised final authority in deciding whether to accept or reject those terms." *Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 293 (3d Cir. 2014) (affirming dismissal of claims against service provider).

## 2.    Providing ministerial services is not a fiduciary act.

The Courts of Appeals that have addressed the issue have unanimously held that the sorts of ministerial services Merrill Lynch provided, such as record-keeping and providing easy access to investment options, are not fiduciary acts. In *Hecker v. Deere & Co.*, 556 F.3d 575, 583, *reh'g*

*denied*, 569 F.3d 708 (7th Cir. 2009), the Seventh Circuit affirmed the dismissal of the complaint against one of Merrill Lynch's competitors, holding that "a service provider does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms." The Third Circuit followed suit in *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011). It upheld the dismissal of claims against a service provider and held that the provider "owes no fiduciary duty with respect to the negotiation of its fee compensation" because the company that hired the service provider — the equivalent of Clifford Chance here — was responsible for assessing the reasonableness of those fees. To the same effect are *Leimkuehler*, 713 F.3d at 912, and *Santomenno*, 768 F.3d at 295.

As in *Hecker*, *Renfro*, *Leimkuehler*, and *Santomenno*, Merrill Lynch's provision of services to the Clifford Chance Plan does not satisfy the statutory definition of fiduciary. And because the Complaint omits any facts about fiduciary status, it is unclear what Plaintiff's theory might be. But because Plaintiff's claim involves the alleged misuse of assets of the Clifford Chance Plan, the relevant part of the statutory definition is the part that addresses plan assets: "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets[.]" 29 U.S.C. § 1002(21)(A). The "control" in this provision means "actual control over disposition of assets," and "purely 'ministerial' functions" are not enough. *Gruby v. Brady*, 838 F. Supp. 820, 834 (S.D.N.Y. 1993). Moreover, the control must — as the statute states — be "exercised," not hypothetical. *Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 733 (8th Cir. 2008).

In the service provider context, this hurdle is not cleared merely because a service provider offers a menu of investment options available for use in 401(k) plans. That is a "product

design" function and, in any event, plan administrators (like those running the Clifford Chance

Plan) are free to shop around for a menu that suits their plan's needs. *See, e.g.*, *Santomenno*, 768

F.3d at 295; *Leimkuehler*, 713 F.3d at 911; *Renfro*, 671 F.3d at 326-28; *Hecker*, 556 F.3d at 583.

Here, Plaintiff did not allege that Merrill Lynch actually chose the investment options for the

Clifford Chance Plan, but instead admits that the "Plan's Trustees or Investment Advisor" did.

Compl. ¶ 149.[3]

Plaintiff also fails to plead that Merrill Lynch became a fiduciary by giving "investment

advice." *See* 29 U.S.C. § 1002(21)(A)(ii). Plaintiff does allege that Merrill Lynch served as the

"investment adviser" to the Clifford Chance Plan until 2006, but in addition to confirming that

any claim based on "investment advice" is time-barred (*see* Point II, *infra*), this allegation is a

legal conclusion entitled to no weight. *Iqbal*, 556 U.S. at 678. It does not come close to alleging

facts showing that Merrill Lynch might meet the five-part test in the Department of Labor rule on

investment advice.[4] Under that rule, Plaintiff must allege that Merrill Lynch (1) renders advice

to the plan as to the value of securities or other property, or makes recommendation as to the

advisability of investing in, purchasing, or selling securities or other property, (2) *on a regular*

*basis*, (3) to the Clifford Chance Plan pursuant to a mutual agreement, arrangement or

understanding, written or otherwise, between Merrill Lynch and the Clifford Chance Plan or a

fiduciary with respect to the plan, (4) that *such services will serve as a primary basis for*

*investment decisions with respect to plan assets*, and (5) that Merrill Lynch will render

---

[3] Plaintiff's reference throughout the Complaint to the "Plan's Trustees" apparently means the retirement committee of the plan's sponsor, Clifford Chance. *See, e.g.,* Compl. ¶ 3 ("This action is filed after plaintiff made a claim to Clifford Chance US LLP, which claim was denied by the trustees of the Plan in March 2013.").

[4] The Department of Labor recently proposed substantial revisions to this rule. *See* "Definition of the Term 'Fiduciary': Conflict of Interest Rule – Retirement Investment Advice; Notice of Proposed Rulemaking and Withdrawal of Previous Proposed Rule," 80 Fed. Reg. 21928 (Apr. 20, 2015) ("Proposed Rule"), but the new rule has not been adopted, and would not be retroactive in any event.

*individualized investment advice* to the plan based on the particular needs of the plan regarding

such matters as investment policies or strategy, overall portfolio composition, or diversification

of plan investments. *See* 29 C.F.R. § 2510.3-21(c). Each prong of that test "must, in each

instance, be satisfied before a person can be treated as a fiduciary adviser," Proposed Rule at

21928, but Plaintiff has not pleaded facts to establish any of them.

> **3.    Plaintiff has not plausibly alleged that any fees were "excessive."**

Finally, other than by intoning the word "excessive," Plaintiff has not alleged that the

fees he challenges were in fact unreasonably high. In considering excessive fee claims in the

ERISA context, the Second Circuit has looked to the standard for excessive fee claims under the

Investment Company Act. *See Young v. General Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33

(2d Cir. 2009) (citing *Gartenberg v. Merrill Lynch Asset Mgmt.*, 694 F.2d 923, 928 (2d Cir.

1982). That requires a fee "so disproportionately large that it bears no reasonable relationship to

the services rendered and could not have been the product of arm's-length bargaining." *Id.*

Here, Plaintiff has not even alleged the actual size of the mutual fund fees. That failure by

itself justifies dismissal under *Twombly* and *Iqbal*. And simply calling a fee "too high" is not

enough to state a claim. As the Seventh Circuit observed in *Hecker*, "nothing in ERISA requires

every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of

course, be plagued by other problems)." *Hecker*, 556 F.3d at 586. In short, Plaintiff's allegations

of "excessive" fees, like his allegations of fiduciary status, do not move his ERISA claim over

the "plausibility" threshold.

> **B.    The Sherman Act Claim Should Be Dismissed Because Plaintiff Has Not Plausibly Alleged Market Power in a Relevant Market, Coercive Acts, or Harm to Competition.**

Seemingly as an afterthought, Plaintiff also alleges that Merrill Lynch's offering of

certain funds in connection with its 401(k) plan services constituted an unlawful tying

arrangement in violation of the Sherman Act. Compl. ¶¶ 186-97. Plaintiff has failed to state a

tying claim for three reasons: first, because Plaintiff has not plausibly alleged that Merrill Lynch

has market power in any properly defined relevant market for a tying product; second, because

Plaintiff has not plausibly alleged that Merrill Lynch coerced the Clifford Chance Plan to invest

in Merrill Lynch funds; and third, because Plaintiff has failed to plead harm to competition in a

relevant market, which is required to establish antitrust standing.

   *Twombly* requires Plaintiff to plead "enough factual matter (taken as true) to suggest that"

each element of a claim is satisfied, 550 U.S. at 556. A tying arrangement may be found where

the availability of one item (the "tying" item) is conditioned on the purchase of another item (the

"tied" item) or on agreeing not to purchase the tied item from the seller's competitors. *See*

*Northern Pac. Ry. Co. v. U.S.*, 356 U.S. 1, 5-6 (1958). To state a *per se* tying claim in this

Circuit, plaintiffs must allege facts satisfying five elements:

> first, a tying and a tied product; second, evidence of *actual coercion* by the seller that
> forced the buyer to accept the tied product; third, *sufficient economic power in the tying
> product market to coerce purchaser acceptance of the tied product*; fourth,
> anticompetitive effects in the tied market; and fifth, the involvement of a "not
> insubstantial" amount of interstate commerce in the "tied" market.

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (emphasis added). With respect

to economic power, "consistent with *Jefferson Parish,* both the Sixth and Seventh Circuits . . .

have opined that thirty percent serves as the minimum market share from which the market

power in the tying product market can be inferred." *In re Wireless Tel. Servs. Antitrust Litig.*,

385 F. Supp. 2d 403, 417 (S.D.N.Y. 2005) (referencing *Jefferson Parish Hosp. Dist. No. 2 v.*

*Hyde*, 466 U.S. 2 (1984), *abrogated on other grounds*, *Illinois Tool Works Inc. v. Indep. Ink,*

*Inc.*, 547 U.S. 28 (2006)). Alleging market power requires more than stating a company is large;

it requires facts that show the seller "has the power, within the market for the tying product, to

raise prices or to require purchasers to accept burdensome terms that could not be exacted in a completely competitive market." *Fortner Enters., Inc.*, 429 U.S. at 620.

As a threshold matter, Plaintiff does not even attempt to define in economic and geographic terms *any* relevant market, much less a properly defined market in which Merrill Lynch allegedly has market power. Nor does he attempt to define the market in which Merrill Lynch's actions allegedly resulted in anticompetitive effects. Critically, Plaintiff does not allege facts showing that Merrill Lynch so dominated the national 401(k) plan market that the Clifford Chance Plan had no choice but to contract for Merrill Lynch's services. The most Plaintiff can muster are allegations about the size of Merrill Lynch's overall "wealth management" business. *See, e.g.,* Compl. ¶ 190 (alleging that Merrill Lynch's 2001 Annual Report boasted that Merrill Lynch was "number one" among *25 wealth management firms*, which is not the same thing as the 401(k) plan market). These allegations do not come close to plausibly alleging that Merrill Lynch has market power in the retirement plan services industry. *See Fortner Enters.*, 429 U.S. at 620-21; *Jefferson Parish*, 466 U.S. at 7-8; *TechReserves Inc. v. Delta Controls Inc.*, No. 13 CIV. 752 GBD, 2014 WL 1325914, at *3-9 (S.D.N.Y. Mar. 31, 2014) (dismissing tying claim for failing to plead a plausible relevant market, defendants' market power, a cognizable antitrust injury, an agreement, and coercion).

Indeed, Plaintiff's own allegations actually negate any claim of Merrill Lynch's market power. While Plaintiff alleges that Merrill Lynch has "over $442 Billion in retirement assets in over 39,000 work-based retirement programs including many thousands of 401k plans as wells [sic] as Individual Retirement Plans (IRA's) for over 6.5 million individuals" (Compl. ¶ 1), Plaintiff also alleges that the "Labor Department oversees 483,000 participant-directed individual account plans such as 401(k)-type plans with 72 million participants and over $3 trillion in assets (*id.* ¶ 52). Thus, on the face of the Complaint itself, it is clear that Merrill Lynch

has nowhere near the 30 percent minimum market share requirement "from which the market power in the tying product market can be inferred." *In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d at 417.

Plaintiff also fails to allege the requisite element of coercion: that Merrill Lynch somehow forced the Clifford Chance Plan or plan participants to invest in particular funds. "Tying arrangements need only be condemned if they restrain competition on the merits by forcing purchases that would not otherwise be made." *Jefferson Parish*, 466 U.S. at 27-28. "Even under notice pleading, an antitrust defendant charged with illegal tying is entitled to some specificity as to the conduct alleged to be coercive, the customers who would have purchased a product elsewhere but for the coercion, the particular products sold as a result of the coercion, the anticompetitive effects in a specified market, and the effect on . . . the plaintiff." *E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 32 (2d Cir. 2006) (affirming dismissal of tying claim against lumber supplier and distributor because plaintiff pleaded insufficient facts).

Plaintiff relies entirely upon his conclusory assertion that "Merrill Lynch used its market power and fiduciary duty in its Record-keeper, Custodian or Investment Advisor product role, to tie . . . " Compl. ¶ 192. But this is the kind of legal conclusion that, under *Iqbal*, must be disregarded for purposes of a motion to dismiss, 556 U.S. at 678, and the Complaint lacks a single averment of fact on this point. Without plausible factual allegations suggesting coercion, Plaintiff fails to state a tying claim. *See Twombly*, 550 U.S. at 556-57 ("Without more . . . a conclusory allegation . . . does not supply facts adequate to show illegality.").

Finally, Plaintiff's antitrust claim should be dismissed because he fails to allege harm to competition. Sherman Act Section 1 claims require plaintiffs to allege sufficient facts to establish that they suffered an antitrust injury. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (defining antitrust injury as "injury of the type the antitrust laws were intended

to prevent"); *TechReserves Inc.*, 2014 WL 1325914, at *3-4. "This antitrust injury requirement

underscores the fundamental tenet that the antitrust laws were enacted for the protection of

*competition*." *Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir. 1994) (citing *Brunswick,* 429 U.S. at

488). The antitrust injury requirement applies equally to all antitrust plaintiffs, including those

who allege *per se* violations of the antitrust laws. *Atlantic Richfield Co. v. USA Petroleum Co.*,

495 U.S. 328, 341-42 (1990). The injury requirement overlaps with the need to allege facts

showing a defendant unreasonably restrained competition under a "rule of reason" analysis. *See*

*TechReserves*, 2014 WL 1325914, at *6 ("Under the Rule of Reason, Plaintiff bears the initial

burden of pleading antitrust injury by alleging facts demonstrating that Defendants' alleged

conduct had an 'actual adverse effect on competition as a whole in the relevant market[.]'")

(quoting *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 316-17 (2d Cir.

2008)).[5]

    Plaintiff makes no attempt to allege — and he cannot plausibly allege — adverse effects

on competition as a whole in any relevant market. For example, Plaintiff does not allege that

Merrill Lynch's offering of its own funds along with other funds somehow stifled competition in

the national market for mutual funds. Likewise, Plaintiff does not allege that Merrill Lynch's

conduct reduced the number of mutual funds available, decreased the quality of mutual funds

available, increased the prices of mutual funds, or made it more difficult for other companies to

---

[5] *See also Concord Assocs., L.P. v. Entm't Properties Trust*, No. 12 CIV. 1667 ER, 2014 WL
1396524, at *12-14 (S.D.N.Y. Apr. 9, 2014) (dismissing § 1 claim under rule of reason analysis
for failure to plead a relevant market); *Frangipani v. HBO*, No. 08 CIV. 5675 (GBD), 2010 WL
1253609, at *3-5 (S.D.N.Y. Mar. 16, 2010) (dismissing § 1 claim under rule of reason analysis
for failure to plead "actual adverse effect on market competition"); *Floors-N-More, Inc. v.
Freight Liquidators*, 142 F. Supp. 2d 496, 501-02 (S.D.N.Y. 2001) (same); "[W]hether an actual
adverse effect has occurred is determined by examining factors like reduced output, increased
prices and decreased quality. So too may a demonstration of significant barriers to entry into [a
particular] market show an actual adverse effect on competition." *In re Wireless Tel. Servs.
Antitrust Litig.*, 385 F. Supp. 2d at 415 (citations omitted).

offer those funds. To the contrary, the parts of Plaintiff's complaint that emphasize the rise of low-cost alternatives (such as Vanguard funds) and growing consumer awareness of mutual fund fees suggest that price competition in the mutual fund market has only grown healthier. *See* Compl. ¶¶ 45, 50, 95-97.

For these reasons, the Court should dismiss Plaintiff's Sherman Act claim with prejudice.[6]

### C.    ERISA Completely Preempts the State Law Claim.

ERISA preempts state laws insofar as they "relate to" an employee benefit plan under ERISA. 29 U.S.C. § 1144(a). The scope of preemption is broad. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47-48 (1987) ("we have emphasized that the pre-emption clause is not limited to state laws specifically designed to affect employee benefit plans"). Thus, ERISA can preempt a claim for deceptive business practices. *See Costa v. Astoria Fed. Sav. & Loan Ass'n*, 995 F. Supp. 2d 146, 154-55 (E.D.N.Y. 2014) (dismissing N.Y. General Business Law § 349 claim on grounds of ERISA preemption) (collecting cases).

Here, Plaintiff's deceptive business practice claim relates entirely to his status as a beneficiary of the Clifford Chance Plan (Compl. ¶¶ 1, 6, 34) and his allegation that Merrill Lynch charged "excessive" fees to participants in that Plan. This is a classic example of a claim that is completely preempted by ERISA; it should be dismissed.[7]

---

[6] For the same reasons, to the extent Plaintiff is attempting to state a claim for violation of New York's Donnelly Act (*see* Compl. ¶ 20), the Court should dismiss it. *See United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, 146 F. Supp. 2d 385, 398 n.4 (S.D.N.Y. 2001) ("Claims under the Donnelly Act . . . are analyzed in the same manner as claims under the Sherman Act."), *aff'd sub nom*, *United Magazine Co. v. Curtis Circulation Co.*, 279 F. App'x 14 (2d Cir. 2008).

[7] A claim for violation of Section 349 also requires allegations of *facts* demonstrating that Merrill Lynch engaged in consumer-oriented conduct that was "deceptive or misleading in a material way" to a "reasonable consumer," and that the plaintiff was injured because of it. *Ladino v. Bank of Am.*, 861 N.Y.S.2d 683, 686-87 (N.Y. App. Div. 2008) (dismissing Section 349 claim);

## II.    PLAINTIFF'S CLAIMS ARE LARGELY TIME-BARRED.

The statutes of limitations bar Plaintiff's ERISA and state law claims in their entirety. With respect to his antitrust claim, the statute of limitations bars any claim that arose before March 16, 2011.

### A.    The ERISA Claim Is Time-Barred.

Statutes of limitations serve important public policies, including "rapid resolution of disputes, repose for those against whom a claim could be brought, and avoidance of litigation involving lost evidence or distorted testimony of witnesses." *Carey v. IBEW Local 363 Pension Plan,* 201 F.3d 44, 47 (2d Cir. 1999). Under ERISA, plaintiffs must bring fiduciary duty claims before the earlier of (1) six years after the breach;[8] or (2) three years after plaintiff learned of the breach. 29 U.S.C. § 1113. For the latter standard, the clock begins running when the plaintiff knew the facts necessary to understand that an ERISA fiduciary breached its duty. *See Downes v. JP Morgan Chase & Co.*, No. 03 CIV.8991(GEL), 2004 WL 1277991, at *3 (S.D.N.Y. June 8, 2004).

In the case of "fraud or concealment," the statute of limitations does not expire until six years after the date of discovery of the breach. This exception does not apply here because Plaintiff has not alleged (nor could he allege) that Merrill Lynch concealed the fees he paid.

As a result, Plaintiff's claim for breach of fiduciary duty began to run when (i) Plaintiff learned that Merrill Lynch did not offer what he considers low-fee index funds, (ii) Plaintiff knew that Merrill Lynch offered Merrill Lynch branded funds, and (iii) Plaintiff knew the level of fees charged by the funds in the Clifford Chance Plan. *See Young v. Gen. Motors Inv. Mgmt.*

---

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25-26 (1995). For all the reasons discussed above, Plaintiff has failed to plausibly allege such a claim.

[8] The Supreme Court recently addressed this aspect of ERISA's limitations provisions, *Tibble v. Edison Int'l*, No. 13-550, 2015 WL 2340845 (U.S. May 18, 2015), but Defendants are not relying on that provision in this section of the motion.

*Corp.*, 550 F. Supp. 2d 416, 419-20 (S.D.N.Y. 2008) (dismissing ERISA claim on statute of limitations grounds where plaintiff alleged that it was imprudent for the 401(k) plan service provider to offer undiversified funds and funds with excessive fees), *aff'd on other grounds*, 325 F. App'x 31 (2d Cir. 2009).

Plaintiff had actual knowledge of the pertinent facts far more than three years before he filed the Complaint. Plaintiff concedes that he started investing in the Clifford Chance Plan in 1991 and that he invested before Clifford Chance terminated his right to make new contributions to the Plan in 2003. Compl. ¶ 6. Plaintiff regularly received account statements and disclosure documents about his participation in the Clifford Chance Plan. *See id.* ¶¶ 175, 189. Yet he waited until March 16, 2015 to sue. ERISA bars such stale claims. *See Young*, 550 F. Supp. 2d at 420 ("The allegedly excessive fees that form the central basis of this claim were readily apparent from the information provided to all Plan participants more than three years before Plaintiffs filed this suit.").

### B. The Sherman Act Bars Any Tying Claim That Accrued Prior To March 16, 2011.

The Sherman Act bars a claim unless asserted within four years after the claim accrued. 15 U.S.C. § 15b. The statute of limitations may be tolled only if the plaintiff establishes that (1) the defendant concealed the existence of the claim, (2) the plaintiff did not know of that claim until less than four years before he sued, and (3) plaintiff's ignorance was not attributable to his own lack of diligence. *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1083 (2d Cir. 1988). "Courts have described the burden of establishing fraudulent concealment as a heavy one." *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 347 (D. Vt. 2010).

Fraudulent concealment is as implausible with respect to the Plaintiff's tying claim as it is with respect to his ERISA claim. Although some antitrust claims, such as price fixing, may be "self-concealing" because "accomplishing those schemes require affirmative acts of

concealment," a tying claim requires forcing a purchaser to buy a tied product and thus does not require affirmative acts of concealment. *Compare Vincent v. Money Store*, 304 F.R.D. 446, 458-59 (S.D.N.Y. 2015) (distinguishing price-fixing claim at issue in *Hendrickson* and holding that plaintiffs were not entitled to equitable tolling of their Fair Debt Collection Practices Act claims). Because a four-year statute of limitations applies, the Sherman Act bars any tying claim arising from conduct prior to March 16, 2011.

### C.    The New York General Business Law Claim Is Time-Barred.

Plaintiffs must bring claims under New York General Business Law Section 349 within three years of when the claims arose. *Gaidon v. Guardian Life Ins. Co.*, 96 N.Y.2d 201, 210 (2001) (applying CPLR 214(2)). Section 349 claims accrue when injury occurs. *Id.* at 211. In this case, Plaintiff was called upon to pay "higher fee" costs when he first invested in the Clifford Chance Plan in 1991. Any claim under the General Business Law is long since time-barred.

### III.    PLAINTIFF CANNOT SERVE AS CLASS REPRESENTATIVE AND AS CLASS COUNSEL.

Under Fed. R. Civ. P. 23(d)(1)(D), courts may "require that the pleadings be amended to eliminate allegations about representation of absent persons." Motions to strike class allegations "may be addressed prior to the certification of the class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear." *Jaffe v. Capital One Bank*, No. 09 CIV. 4106 (PGG), 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010) (quoting *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92(SAS), 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008).

Striking the class allegations is appropriate here because Plaintiff cannot serve as both the class representative and class counsel. "It is well settled law that a *pro se* plaintiff may not represent the interests of third parties." *Id.* at *10 (citing *Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir. 1998) and *Pridgen v. Andresen,* 113 F.3d 391, 393 (2d Cir. 1997)). A class representative serving as class counsel creates an impermissible conflict of interest between the

class counsel's interest in obtaining fees and class members' interest in recovery. *See id.* at *10-11 (citing 5 Moore's Federal Practice § 23.25 (3d ed. 2010) ("[A] *pro se* class representative cannot adequately represent the interests of other class members. Moreover . . . an attorney may not bring a class action *pro se* because too close a relationship between the class representative and class counsel is a disqualifying conflict of interest.")).

As a *pro se* plaintiff, Plaintiff may not represent the interests of third parties. Plaintiff named only himself as plaintiff in the Complaint, and he brought the action "by and through his own counsel," Compl. at 1, but he also purports to represent "thousands" of retirement plans and even more thousands of their participants. *Id.* ¶¶ 1, 154-61. The fact that Plaintiff claims to be representing the Clifford Chance Plan as well makes no difference; the fact remains that the same person is trying to serve as both the class representative and class counsel. Under *Jaffe* and numerous other authorities, this is impermissible.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice. In the alternative, the Court should strike the class allegations.

Dated: New York, New York
      May 20, 2015

Respectfully submitted,

SIDLEY AUSTIN LLP

By: /s/ Andrew W. Stern
    Andrew W. Stern
    787 Seventh Avenue
    New York, New York 10019
    Tel: (212) 839-5300
    Fax: (212) 839-5599
    astern@sidley.com

    Anne E. Rea (*admitted pro hac vice*)
    Eric S. Mattson (*admitted pro hac vice*)
    One S. Dearborn Street
    Chicago, Illinois 60603
    Tel: (312) 853-7000
    Fax: (312) 853-7036
    area@sidley.com
    emattson@sidley.com

    *Attorneys for Defendants Bank of America*
    *Corporation and Merrill Lynch & Co., Inc.*