USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____________
DATE FILED: 3/25/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CRAIG M. WALKER, On Behalf of the 401k Plan, Himself and All Others Similarly Situated,

Plaintiffs,

- against -

MERRILL LYNCH & CO. INC., BANK OF AMERICA CORPORATION,

Defendants.

**ORDER**

15 Civ. 1959 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Pro se Plaintiff Craig Walker brings this putative class action pursuant to Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1001 et. seq., Section 1 of the Sherman Act, and N.Y. Gen. Bus. Law § 349. Plaintiff alleges that Merrill Lynch and Bank of America breached their fiduciary duties under ERISA by (1) selecting high-fee funds for his 401(k) plan; and (2) receiving fees as a result of recommending high-fee funds to plan trustees. Plaintiff also claims that Defendants' selection of funds constitutes a tying arrangement in violation of the Sherman Act and a deceptive trade practice under New York law.

Defendants have moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P 12(b)(6) or, in the alternative, to strike the class allegations. (Dkt. No. 14)

**BACKGROUND**[1]

Between 1990 and 1999, Plaintiff was a litigation partner at Rogers & Wells LLP. (Cmplt. (Dkt. No. 1) ¶ 6) After the firm's merger with Clifford Chance US LLP in 2000, Plaintiff worked as a litigation partner at Clifford Chance until 2003. (Id.) Plaintiff participated in the firms' 401(k) plan (the "Plan") from 1991 until 2003, "at which time [Plaintiff alleges that] he was improperly terminated [as a Plan participant]." (Id.) Plaintiff continues to hold his 401(k) account. (Id. ¶¶ 6, 34)

Merrill Lynch & Co. Inc. is a Delaware corporation headquartered in New York City. (Id. ¶ 7) Merrill Lynch offers a range of financial services, including, inter alia, "capital market services, investment banking and advisory services, wealth management, [and] asset management." (Id.) On October 1, 2013, Merrill Lynch merged with Bank of America Corporation, and now operates as a Bank of America subsidiary. (Id. ¶ 12)

Merrill Lynch "was the investment adviser" for the Plan from 1991 to 2006, and the "record keeper/administrator and plan investment menu provider" from 1991 through 2015. (Id. ¶ 1, 35) In this role, "Merrill Lynch provided a [r]oster or [s]late of mutual funds." (Id. ¶ 148) "The Plan's Trustees or Investment Advisor would select from this [r]oster or [s]late the mutual funds that would be placed in the Plan's Menu." (Id. ¶ 149)

Plaintiff alleges that Merrill Lynch (1) failed to include a sufficient number of low-fee funds in the roster of mutual funds it provided to the Plan's trustees; (2) included its own high-fee funds and collective trusts in the roster; and (3) orchestrated a "fee sharing" arrangement by which it reaped kickbacks from fees Plan participants paid to the funds. (Id. ¶¶

[1] The facts set forth in this opinion are drawn from the Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

2, 147-153, 193) When Merrill Lynch "exited the fund business" in 2006, it added funds to the roster from Blackrock, which it partially owns. (Id. ¶ 40)

Plaintiff's allegations concerning the funds made available to Plan participants are inconsistent. He states at one point that the "Trustees [f]ailed to [a]ct in the [s]ole [i]nterest of the [p]articipants . . . by [o]ffering a [m]enu of [f]unds with [o]nly [o]ne [l]ow [f]ee [o]ption." (Id. at 45)[2] Elsewhere in the Complaint, however, Plaintiff claims that "[t]he Merrill Lynch menu offering did not include any low fee mutual funds." (Id. ¶ 38) Plaintiff also alleges that "[t]he only index funds in the [r]oster or [s]late were the unregistered Merrill Lynch Equity Index Collective Trust and the unregistered Merrill Lynch Preservation Collective Trust." (Id. ¶ 150) However, he later alleges that "the Plan had only one index offering." (Id. ¶ 165)

In any event, the Complaint alleges that an unspecified portion of fees participants paid in connection with mutual fund and collective trust investments was "kicked back to Merrill Lynch[,] which divided the kickback with [Clifford Chance]." (Id. ¶ 178) This "revenue sharing" arrangement was not disclosed to Plaintiff and other Plan participants until the second quarter of 2012. (Id. ¶ 179) Even then, the notice provided was misleading, because Defendants described the kickbacks as "indirect revenue" and did not disclose the size of the payments. (Id. ¶¶ 179-81)

Plaintiff asserts that "[a] class action is warranted . . . , as the number of plans and participants and beneficiaries affected is large." (Id. ¶ 154) The intended scope of Plaintiff's class action is unclear. He states early in the Complaint that the "[c]lass [a]ction is brought on behalf of the Defined Retirement Contribution Plans of Clifford Chance U.S. LLP."

---

[2] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Filing system.

(Id. ¶ 21) By the end of the Complaint, however, Pláintiff is asserting claims on behalf of tens of thousands of other "defined contribution plans, 401k plans, and IRAs and [millions of] participants and beneficiaries that were damaged by the wrongful actions of Merrill Lynch." (Id. ¶¶ 155, 157, 161)

Plaintiff claims that on October 4, 2012, he complained to Clifford Chance about the Plan. (Id. ¶¶ 22-23) Plaintiff does not set forth the nature of his complaint, however, nor does he identify who he complained to or explain the process by which he complained. According to Plaintiff – whatever his claims were – they were summarily denied one week later, and "[a] formal decision denying the [c]laims was made by the trustees in March 2013." (Id. ¶¶ 23, 26)

In May 2013, Plaintiff filed an appeal of this decision on behalf of himself and others similarly situated. (Id. ¶ 27) Although limited discovery was permitted during the appeal process, Plaintiff complains that he was forced to proceed "without the benefit of the relevant documents." (Id. ¶¶ 29, 32) Plaintiff's appeal was denied in August 2013. (Id. ¶ 30)

Plaintiff filed the instant action on March 16, 2015. (Cmplt. (Dkt. No. 1))

**DISCUSSION**

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that (1) Plaintiff's claims are barred by the applicable statutes of limitations; (2) Plaintiff has not pled facts demonstrating that Merrill Lynch acted as an fiduciary under ERISA; (3) Plaintiff has not alleged that Merrill Lynch's fees were excessive; (4) Plaintiff has not plausibly alleged a Sherman Act tying claim; and (5) ERISA preempts Plaintiff's state law claim. (See Def. Br. (Dkt. No. 15)) Defendants have also moved to strike the class allegations on the grounds that Plaintiff "cannot serve as both the class representative and class counsel." (Id. at 23)

## I. MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion challenges the legal sufficiency of the claims asserted in a complaint. "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). These factual allegations must be "sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint[,]" Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of

which plaintiff[] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted).[3]

## II.   ERISA CLAIM

Defendants argue that Plaintiff's ERISA claim must be dismissed because the Complaint pleads "no facts plausibly suggesting that Merrill Lynch acted as a fiduciary." (Def. Br. (Dkt. No. 15) at 11)  Defendants contend that (1) "offering mutual funds that charge fees authorized by contract is not a fiduciary act"; and (2) Merrill Lynch provided only ministerial services to the Plan. (Id.)  Defendants further argue that – even if Plaintiff had pleaded facts sufficient to show that Merrill Lynch was a fiduciary – the Complaint does not plead facts demonstrating that its fees were excessive. (Id.)

### A.   Applicable Law

Under Section 409 of ERISA,

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which

---

[3] In support of their motion to dismiss, Defendants have submitted an "Application for Plan Services" agreement executed by representatives of Clifford Chance US LLP and Merrill Lynch on December 3, 2008. (See Stern Decl. (Dkt. No. 16) ¶¶ 2-3 and Exs. A-B)  The relevance of this agreement is not entirely clear.  Plaintiff's claims primarily concern conduct that Merrill Lynch engaged in between 1991 and 2003, when Plaintiff was a participant in his law firms' 401(k) plan. (See Cmplt. (Dkt. No. 1) ¶ 6)  Although Defendants assert that their submission of this agreement is appropriate because Plaintiff references this document in the Complaint (see Def. Br. (Dkt. No. 15) at 9 n.2), Defendants do not include supporting citations to the Complaint, and it is not clear to this Court that Plaintiff has referenced the 2008 agreement. Under these circumstances, this Court cannot consider the 2008 agreement in resolving Defendants' motion to dismiss.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." (emphasis in original)); see also Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) ("It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.").

> have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue." Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 730 (2d Cir. 2013) (citing 29 U.S.C. § 1109(a); Pegram v. Herdrich, 530 U.S. 211, 225-26 (2000)).

"'In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'" Coulter v. Morgan Stanley & Co. Inc., 753 F.3d 361, 366 (2d Cir. 2014) (alterations in original) (quoting Pegram, 530 U.S. at 226). ERISA provides that a person is a fiduciary to a plan if the plan identifies them as such. See 29 U.S.C. § 1102(a). The Complaint does not allege that Defendants are named as fiduciaries in the applicable Plan documents. However, a person or entity may also be a fiduciary under ERISA if that person or entity acts "in the capacity of manager, administrator, or financial adviser to a 'plan,'" Pegram, 530 U.S. at 222, thereby becoming a "functional fiduciary." Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A), 768 F.3d 284, 291 (3d Cir. 2014). A "functional" fiduciary duty arises where a person

> "(i) . . . exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) . . . renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) . . .

> has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); see also Santomenno, 768 F.3d at 291.

"A person only falls within subsections (i) and (iii) if they possess final authority to make decisions for the plan or if they have control over plan assets." Apogee Enters., Inc. v. State St. Bank & Tr. Co., No. 09 Civ. 1899(RJH), 2010 WL 3632697, at *2 (S.D.N.Y. Sept. 17, 2010).

As to subsection (ii), in 29 C.F.R. § 2510.3-21(c), the Department of Labor provides the following guidelines for determining whether a service provider is an investment advice fiduciary:

> (c) Investment advice.
>
> (1) A person shall be deemed to be rendering "investment advice" to an employee benefit plan . . . only if:
>
> (i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and
>
> (ii) Such person either directly or indirectly (e.g., through or together with any affiliate) –
>
> (A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or
>
> (B) Renders any advice described in paragraph (c)(1)(i) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as,

> among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3-21(c).

Accordingly,

> to plead that a defendant is a fiduciary because it provided "investment advice for a fee," a plaintiff must plead that (1) the defendant provided individualized investment advice; (2) on a regular basis; (3) pursuant to a mutual agreement, arrangement, or understanding that (4) the advice would serve as a primary basis for the plan's investment decisions; and (5) the advice was rendered for a fee.

F.W. Webb Co. v. State St. Bank & Trust Co., No. 09 Civ. 1241(RJH), 2010 WL 3219284, at *8 (S.D.N.Y. Aug. 12, 2010).

**B. Analysis**

The Court first considers whether the Complaint alleges facts sufficient to demonstrate that Merrill Lynch exercised discretionary authority over the management or administration of the Plan, or over Plan assets, such that the requirements of 29 U.S.C. § 1002(21)(A)(i) or (iii) are met. The Court then analyzes whether Merrill Lynch provided "investment advice for a fee" under subsection (ii).

**1. Discretionary Authority**

The Complaint claims that Merrill Lynch violated its fiduciary duty to Plan participants by (1) not including "any low fee mutual funds" in the fund roster it provided to Plan Trustees; (2) including a few index funds with high fees; (3) including many of its own funds in the roster until it exited the fund business in 2006, and then substituting the funds of Blackrock, in which it held a 45% interest; and (4) "arrang[ing] 'fee sharing' kickbacks with those mutual fund providers [it included in the fund roster]." (Cmplt. (Dkt. No. 1) ¶¶ 37-42)

The courts have consistently rejected the notion that a service provider becomes an ERISA fiduciary as a result of recommending a roster of funds to a plan's trustees, however.

In Hecker v. Deere & Co., 556 F.3d 575 (7th Cir. 2009), the leading case in this area, the Seventh Circuit considered a "two menu arrangement" – similar to that at issue here – in which Fidelity initially offered the employer sponsor a broad array of funds, and then the sponsor and Fidelity agreed to "limit the selections available to [the Company's] employees to Fidelity funds," which plaintiffs claimed featured unreasonably high fees. Hecker, 556 F.3d at 579, 581; see also F.W. Webb Co., 2010 WL 3219284, at *6 ("In Hecker, the Seventh Circuit examined the fiduciary implications of a . . . two-menu arrangement."). Plaintiffs argued that Fidelity had "exercised discretionary authority or control over the management of the Plans, the disposition of the Plans' assets, or the administration of the Plans . . . by its act of limiting [the employer sponsor's] selection of funds through the Trust Agreement to those managed by Fidelity. . . ." Id. at 583. The court rejected this argument, noting that plaintiffs had cited

> no authority that holds that limiting funds to a sister company automatically creates discretionary control sufficient for fiduciary status. To the contrary, . . . a service provider does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms.

Id. (citing Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463 (7th Cir. 2007); Schulist v. Blue Cross of Iowa, 717 F.2d 1127 (7th Cir. 1983)). The court then went on to find that the employer sponsor, and not Fidelity, had "the final say on which investment options w[ould] be included. The fact that [the employer sponsor] may have discussed this decision, or negotiated about it, with Fidelity Trust does not mean that Fidelity Trust had discretion to select the funds for the Plans." Id.

The reasoning of Hecker – which has been widely adopted[4] – is fully applicable here. Although Plaintiff pleads that Merrill Lynch provided the Trustees with an initial roster of mutual funds, the Complaint also makes clear that '[t]he Plan's Trustees . . . would select from this [r]oster or [s]late the mutual funds that would be placed in the Plan's Menu." (Cmplt. (Dkt. No. 1) ¶¶ 148-49) Accordingly, the Trustees had the "final say" on which investment options would be available to Plan participants, and the fact that the Trustees discussed or negotiated this decision with Merrill Lynch does not mean that Merrill Lynch had discretionary control over the management or administration of the Plan or over its assets within the meaning of subsections (i) and (iii) of 29 U.S.C. § 1002(21)(A).

---

[4] Circuit decisions that have adopted Hecker include the following: McCaffree Fin. Corp. v. Principal Life Ins. Co., 811 F.3d 998 (8th Cir. 2016) (rejecting plaintiff's claim that defendant's selection of "initial investment menu constituted both an exercise of discretionary authority over plan management under 29 U.S.C. § 1002(21)(A)(i) and plan administration under (A)(iii)"); Santomenno, 768 F.3d at 288-89, 293-95 (rejecting plaintiffs' claim that John Hancock exercised discretionary authority over ERISA plan where John Hancock "selected the investment options to be included in the Big Menu [presented to the plan trustees]," but "the trustees selected which investment options to offer to their Plan participants, known as the 'Small Menu'"); and Leimkuehler v. Am. United Life Ins. Co., 713 F.3d 905, 908-11 (7th Cir. 2013) (plaintiff trustee objected to defendant's undisclosed "revenue-sharing" arrangements with mutual funds, claiming that defendant had breached its fiduciary duty; defendant "selected a 'menu' of mutual funds and presented this menu to [the 401(k) plan's trustee]"; reaffirming Hecker and holding that the "act of selecting which funds will be included in a particular 401(k) investment product, without more, does not give rise to a fiduciary responsibility").

District courts in this Circuit have likewise found Hecker's reasoning persuasive. See F.W. Webb Co., 2010 WL 3219284, at *6 ("[t]his Court finds Hecker persuasive"; "defendants' role here in establishing the 'big menu' bears too tenuous a connection to the eventual disposition of plan assets to constitute 'authority or control' within the meaning of the statute"); Zang & others similarly situated v. Paychex, Inc., 728 F. Supp. 2d 261, 270 (W.D.N.Y. 2010) ("I find Hecker persuasive, and I adopt its reasoning here"; "Plaintiff's allegation that Paychex controlled which mutual funds to make available to the Plan does not support its claim that Paychex is a fiduciary").

**2. Investment Advice**

As discussed above, a party may have a fiduciary obligation under ERISA where that party has provided "investment advice [to an ERISA plan] for a fee" within the meaning of subsection (ii) of 29 U.S.C. § 1002(21)(A). In order to plead that a defendant is a fiduciary because it provided "investment advice for a fee," however, a plaintiff must plead facts sufficient to demonstrate that

> (1) the defendant provided individualized investment advice; (2) on a regular basis; (3) pursuant to a mutual agreement, arrangement, or understanding that (4) the advice would serve as a primary basis for the plan's investment decisions; and (5) the advice was rendered for a fee.

F.W. Webb Co., 2010 WL 3219284, at *8.

Although the Complaint repeatedly refers to Merrill Lynch as an investment advisor to the Plan (see, e.g., Cmplt. (Dkt. No. 1) ¶¶ 1, 130, 147, 151, 176, 192), the only factual allegations supporting that assertion relate to Merrill Lynch's submission of a roster of mutual funds to the Plan trustees. (See id. ¶¶ 35, 37-41, 151 (complaining about Merrill Lynch's "menu selection")) However, "[a]s a matter of law, simply offering a discrete menu of funds does not constitute investment advice." Leimkuehler v. Am. United Life Ins. Co., No. 1:10-cv-0333-JMS-TAB, 2012 WL 28608, at *11 (S.D. Ind. Jan. 5, 2012), aff'd, 713 F.3d 905 (7th Cir. 2013); see also Zang & others similarly situated v. Paychex, Inc., 728 F. Supp. 2d 261, 270-71 (W.D.N.Y. 2010) (finding that service provider who allegedly "controlled which mutual funds to make available to the Plan . . . did not even provide any investment advice").

Plaintiff has not pled facts demonstrating that Merrill Lynch provided "individualized investment advice" to the Plan; that it did so "on a regular basis"; that it provided that advice pursuant to a "mutual agreement, arrangement, or understanding"; or that

the parties understood that the advice provided by Merrill Lynch "would serve as a primary basis for the plan's investment decisions." See F.W. Webb Co., 2010 WL 3219284, at *8.

* * * *

Given Plaintiff's failure to plead facts demonstrating Merrill Lynch's status as a fiduciary under subsections (i), (ii), or (iii) of 29 U.S.C. § 1002(21)(A), his ERISA claim must be dismissed. See Santomenno, 768 F.3d at 299-300 (dismissing ERISA claim against service provider where plaintiffs had not demonstrated that defendant was a fiduciary under Section 1002(21)(A)); see also In re Citigroup Erisa Litig., 104 F. Supp. 3d 599, 614 (S.D.N.Y.) ("All claims against defendants . . . must be dismissed because they depend on allegations that those defendants breached fiduciary duties that they did not have."), reconsideration denied sub nom. In re Citigroup ERISA Litig., 112 F. Supp. 3d 156 (S.D.N.Y. 2015).

## III. SHERMAN ACT TYING CLAIM

Defendants argue that Plaintiff has failed to state a Sherman Act tying claim because (1) "Plaintiff has not plausibly alleged that Merrill Lynch has market power in any properly defined relevant market for a tying product"; (2) "Plaintiff has not plausibly alleged that Merrill Lynch coerced the Clifford Chance Plan to invest in Merrill Lynch funds"; and (3) "Plaintiff has failed to plead harm to competition in a relevant market, which is required to establish antitrust standing." (Def. Br. (Dkt. No. 15) at 16)

### A. Applicable Law

"A tying arrangement is '"an agreement by a party to sell one product but only on the condition that the buyer also purchase[] a different (or tied) product."'" E & L Consulting, Ltd. v. Doman Indus. Ltd., 472 F.3d 23, 31 (2d Cir. 2006) (quoting Yentsch v.

Texaco, Inc., 630 F.2d 46, 56 (2d Cir. 1980)). There are five "detailed requirements to state a tying claim":

> "first, a tying and a tied product; second, evidence of actual coercion by the seller that forced the buyer to accept the tied product; third, sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product; fourth, anticompetitive effects in the tied market; and fifth, the involvement of a 'not insubstantial' amount of interstate commerce in the 'tied' market."

De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996) (quoting Gonzalez v. St. Margaret's House Hous. Dev. Fund Corp., 880 F.2d 1514, 1516-17 (2d Cir. 1989)).

There are two types of tying arrangements: those that are illegal per se and those that are illegal under the rule of reason. See Jefferson Par. Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 33-34 (1984), abrogated on other grounds by Illinois Tool Works Inc. v. Indep. Ink, Inc., 547 U.S. 28 (2006). Here, Plaintiff has asserted both. (Cmplt. (Dkt. No. 1) ¶ 187) "A tying arrangement may be condemned as illegal per se only 'if the existence of forcing is probable' because there is a 'substantial potential for impact on competition.'" In re Wireless Tel. Servs. Antitrust Litig., 385 F. Supp. 2d 403, 414 (S.D.N.Y. 2005) (quoting Jefferson Parish, 466 U.S. at 15-16). "[W]here a tying arrangement may be condemned as illegal per se, plaintiffs need not allege, let alone prove, facts addressed to the fourth element" – anti-competitive effects. Id. Under the rule of reason, "plaintiffs 'bear an initial burden to demonstrate that the defendants' challenged behavior had an actual adverse effect on competition as a whole in the [tied product] market.'" Id. at 415 (quoting Geneva Pharm. Tech. Corp. v. Barr Labs. Inc., 386 F.3d 485, 506 (2d Cir. 2004)).

**B. Analysis**

As to the first element – a tied and tying product – Plaintiff alleges that Defendants tied collective trusts and mutual funds "to the Merrill Lynch [r]ecord [k]eeping,

[c]ustodian, or [i]nvestment [a]dvice [s]ervices." (Cmplt. (Dkt. No. 1) ¶ 159) Plaintiff further alleges that "[t]he Merrill Lynch [r]ecord-keeper, [c]ustodian, and [i]nvestment [a]dviser services is a distinct product or service." (Id. ¶ 188) While Plaintiff's allegations regarding the tied product – particular collective trusts and mutual funds – are sufficiently clear, the alleged tying product "is exceptionally broad and vague, potentially encompassing hundreds of different products, and the complaint does not attempt to define the phrase or even narrow the range of things or products to which the phrase might refer." E & L Consulting, Ltd., 472 F.3d at 32. Indeed, the Complaint further obscures the nature of the tying product by including allegations concerning Merrill Lynch's market power with respect to "wealth management" in general. (Cmplt. (Dkt. No. 1) ¶ 190) Plaintiff appears to allege that Merrill Lynch required many, if not all, of its 6.5 million wealth management customers to invest in the tied collective trusts or mutual funds identified by Plaintiff. (Id. ¶¶ 153, 156, 190) This is not plausible.

Plaintiff's allegations are also deficient with respect to the market power element. Multiple courts have suggested that a thirty-percent market share is a minimum requirement to establish market power. In re Wireless Tel. Servs. Antitrust Litig., 385 F. Supp. 2d at 417 (noting that the Third, Sixth, and Seventh Circuits have lent support to a "thirty percent threshold"). Here, Plaintiff alleges that Merrill Lynch's Retirement Services Group manages "approximately $442 billion in retirement assets" and "Merrill Lynch Global Wealth Management ha[s] revenue of $14.8 billion." (Cmplt (Dkt. No. 1) ¶ 190) Large as those numbers may seem, they represent a small segment of the nation's retirement and wealth management market, as the Complaint's allegations demonstrate: "The Labor Department oversees 483,000 participant-directed individual account plans such as 401(k)-type plans with 72 million participants and over $3 trillion in assets." (Id. ¶ 52) In sum, even if the Court "narrowly"

construes Plaintiff's alleged tying product to be retirement services, Merrill Lynch controls less than 15% of the market.

Nor does Plaintiff plausibly allege anti-competitive effects in the tied product's market. Even accepting as true Plaintiff's allegation that "Merrill Lynch foreclosed competition from other lower fee 'nonsharing' mutual funds and low[-]fee index funds," there are no facts to indicate that Merrill Lynch's alleged conduct damaged the broader low-fee mutual fund or collective trust market. (See id. ¶ 193) Indeed, the Complaint asserts that the low-fee mutual fund industry grew substantially during the relevant period: "[a]s of the mid-1990's, several . . . investment company family funds had broken with the higher fee funds and sold low cost funds and marketed the low cost approach." (Id. ¶ 62)

In sum, Plaintiff fails to state a tying claim. See E & L Consulting, 472 F.3d at 32 ("[e]ven under notice pleading, an antitrust defendant charged with illegal tying is entitled to some specificity as to the conduct alleged to be coercive, the customers who would have purchased a product elsewhere but for the coercion . . . , [and] the anticompetitive effects in a specified market").

## IV.    GBL SECTION 349 CLAIM

Defendants contend that Plaintiff's General Business Law Section 349 claim is completely pre-empted by ERISA. (Def. Br. (Dkt. No. 15) at 20) ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C § 1144(a). However, "ERISA bars only state law claims against fiduciaries; state law claims against non-fiduciaries escape preemption." United Teamster Fund v. MagnaCare Admin. Servs., LLC, 39 F. Supp. 3d 461, 472 (S.D.N.Y. 2014) (citing Burger v. Empire Blue Cross & Blue Shield, No. 99 Civ. 4366(LMM), 2000 WL 1425101, at *2 (S.D.N.Y. Sept. 27,

2000)). Because the Complaint does not plead facts demonstrating that Merrill Lynch is a fiduciary, Plaintiff's Section 349 claim is not pre-empted by ERISA.

Under 28 U.S.C. § 1367(c), however, "a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." Schaefer v. Town of Victor, 457 F.3d 188, 210 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice." Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 103 (2d Cir. 1998) (emphasis omitted) (citing Carnegie-Mellon Univ., 484 U.S. at 350).

There is no reason to deviate from that rule here. Accordingly, to the extent that the Complaint states a Section 349 claim, this Court declines to exercise supplemental jurisdiction over that claim, and it will be dismissed without prejudice.

## V.  LEAVE TO AMEND

Plaintiff's claims will be dismissed with leave to amend. "Where the possibility exists that [a] defect can be cured," leave to amend "should normally be granted." Wright v. Ernst & Young LLP, No. 97 CIV. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Sch., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)). Moreover, where a claim is dismissed on the grounds that it is "inadequate[ly] pled," there is "a strong preference for allowing [a] plaintiff[] to amend." In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig., No. 07 CIV. 10453, 2011 WL 4072027, at *2 (S.D.N.Y. Sept. 13, 2011) (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).

Although Plaintiff's claims are not adequately pled, this Court cannot conclude that it is impossible for Plaintiff to plead sufficient claims.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted. The Clerk of the Court is directed to terminate the motion (Dkt. No. 14). Any amended complaint will be filed by April 25, 2016.[5]

Dated: New York, New York
March 24, 2016

SO ORDERED.

Paul G. Gardephe
United States District Judge

[5] Given that the Complaint fails to state a federal claim, this Court does not reach Defendants' motion to strike the class allegations. However, pro se Plaintiff should be aware that a pro se party may not pursue class claims. Jaffe v. Capital One Bank, No. 09 Civ. 4106(PGG), 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010) ("It is well settled law that a pro se plaintiff may not represent the interests of third parties. Thus, a pro se plaintiff may not bring an action in which he will serve as both class representative and class counsel." (citations omitted)).