UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CRAIG M. WALKER, On Behalf of the          No. 15-cv-01959 (PGG)
Clifford Chance US LLP 401(k) Plan, and
Himself and All Others Similarly Situated,

                          Plaintiff,

v.

MERRILL LYNCH & CO. INC., BANK OF
AMERICA CORPORATION, MERRILL LYNCH
BANK & TRUST FSB, CAPITAL STRATEGIES
INVESTMENT GROUP,

                       Defendants.
------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF
## CAPITAL STRATEGIES INVESTMENT GROUP'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS

Marissa R. Parker
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
mparker@stradley.com
T: 215-564-8091
F: 215-564-8120
*Attorneys for Defendant Capital Strategies Investment Group*

Date:  July 28, 2016

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 1

III.   MOTION TO DISMISS STANDARD ........................................................................ 5

IV.    ARGUMENT ............................................................................................................ 7

       A.    Plaintiff has failed to state an ERISA breach of fiduciary duty claim against
             Capital Strategies ........................................................................................... 8

       B.    Plaintiff has not pleaded a viable claim against Capital Strategies for knowing
             participation in Merrill Lynch's alleged breach of fiduciary duty ...................... 14

       C.    Plaintiff's ERISA-based claims are time-barred .................................................. 18

       D.    ERISA pre-empts Plaintiff's inadequately-pleaded state law claim for
             deceptive practices ........................................................................................... 20

       E.    Plaintiff's putative class action allegations should be stricken because
             Plaintiff cannot serve as lead plaintiff and lead counsel ..................................... 22

V.     CONCLUSION ........................................................................................................ 24

## TABLE OF AUTHORITIES

**CASES**

Apogee Enters., Inc. v. State St. Bank & Trust Co.,
   No. 09 CIV 1899 RJH, 2010 WL 3632697 (S.D.N.Y. Sept. 17, 2010) .............................9-10

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ...............................................................................................................6

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
   493 F. 3d 87 (2d Cir. 2007) ...................................................................................................6

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) ...............................................................................................................6

Boban v. Bank Julius Baer Postretirement Health & Life Ins. Program,
   723 F. Supp. 2d 560 (S.D.N.Y. 2010) .................................................................................18

Braden v. Wal-Mart Stores, Inc.,
   588 F.3d 585 (8th Cir. 2009) ...................................................................................11, 13-14

Brass v. Am. Film Tech., Inc.,
   987 F.2d 142 (2d Cir. 1993) ..................................................................................................6

Caputo v. Pfizer, Inc.,
   267 F.3d 181 (2d Cir. 2001) ...........................................................................................18-19

Costa v. Astoria Fed. Sav. & Loan Ass'n,
   995 F. Supp. 2d 146 (E.D.N.Y. 2014)..................................................................................21

Coulter v. Morgan Stanley & Co. Inc.,
   753 F.3d 361 (2d Cir. 2014) ..................................................................................................9

Diduck v. Kaszycki & Sons Contractors, Inc.,
   974 F.2d 270 (2d. Cir. 1992) ...............................................................................................15

Donovan v. Cunningham,
   716 F.2d 1455 (5th Cir. 1983) .............................................................................................14

F.H. Krear & Co. v. Nineteen Named Trustees,
   810 F.2d 1250, 1259 (2d Cir. 1987)......................................................................................9

F.W. Webb Co. v. State St. Bank & Trust Co.,
   No. 09 CIV. 1241 RJH, 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010) ......................... 12, 16

Gaidon v. Guardian Life Ins. Co. of Am.,
   750 N.E.2d 1078 (N.Y. 2001)..............................................................................................22

Gerosa v. Savasta & Co.,
329 F.3d 317 (2d Cir. 2003) ...............................................................................................17

Goshen v. Mut. Life Ins. Co.,
774 N.E.2d 1190 (N.Y. 2002)..............................................................................................22

Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,
302 F.3d 18 (2d Cir. 2002) .........................................................................................9, 16-17

Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,
530 U.S. 238 (2000) ............................................................................................................17

Hecker v. Deere & Co.,
556 F.3d 575 (7th Cir. 2009) ........................................................................................ 10, 13

Humphrey v. Rav Investigative & Sec. Servs. Ltd.,
No. 12 CIV. 3581 (NRB), 2016 WL 1049017 (S.D.N.Y. Mar. 11, 2016) ............................23

Iannaccone v. Law,
142 F.3d 553 (2d Cir. 1998) ...............................................................................................22

In re Initial Pub. Offering Sec. Litig.,
No. 21 MC 92(SAS), 2008 WL 2050781 (S.D.N.Y. May 13, 2008)....................................23

Jaffe v. Capital One Bank,
No. 09 CIV. 4106 (PGG), 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) ...........................22-24

Kassner v. 2nd Ave. Delicatessen Inc.,
496 F.3d 229 (2d Cir. 2007) .................................................................................................1

Laboy v. Bd. of Trustees of Bldg. Serv. 32 BJ SRSP,
513 F. App'x 78 (2d Cir. 2013) .............................................................................................8

Leber v. Citigroup, Inc.,
No. 07 CIV. 9329 (SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010)...............................15

Leimkuehler v. Am. United Life Ins. Co.,
713 F.3d 905 (7th Cir. 2013) ......................................................................................9-11, 16

Lenard v. Design Studio,
889 F. Supp. 2d 518 (S.D.N.Y. 2012)..................................................................................21

LoPresti v. Terwilliger,
126 F.3d 34 (2d Cir. 1997) .................................................................................................10

Maurizio v. Goldsmith,
230 F.3d 518 (2d Cir. 2000) ...........................................................................................21-22

Pegram v. Herdrich,
    530 U.S. 211 (2000)) ...................................................................................8

Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan
    Stanley Inv. Mgmt. Inc.,
    712 F.3d 705 (2d Cir. 2013) ......................................................................6

Pilot Life Ins. v. Dedeaux,
    481 U.S. 41 (1987) ...................................................................................21

Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,
    507 F.3d 117 (2d Cir. 2007) ......................................................................6

Pridgen v. Andresen,
    113 F.3d 391 (2d Cir. 1997) ....................................................................22

Renfro v. Unisys Corp.,
    671 F.3d 314 (3d Cir. 2011) .................................................. 11, 13-14, 16

Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A),
    768 F.3d 284 (3d Cir. 2014), cert. denied sub nom., 135 S. Ct. 1860 (2015) ............ 10-11, 16

SCS Commc'ns, Inc. v. Herrick Co.,
    360 F.3d 329 (2d Cir. 2004) ....................................................................15

Siskind v. Sperry Ret. Program, Unisys.,
    47 F.3d 498 (2d Cir. 1995) ........................................................................9

United Teamster Fund v. MagnaCare Admin. Servs., LLC,
    39 F. Supp. 3d 461, 472 (S.D.N.Y. 2014) ...............................................21

Young v. Gen. Motors Inv. Mgmt. Corp.,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008), aff'd, 325 F. App'x 31 (2d Cir. 2009) .....................18

## RULES

29 C.F.R. § 2510.3-21 ......................................................................................12

Fed. R. Civ. P. 4(m) .........................................................................................18

Fed. R. Civ. P. 9(b) ..........................................................................................19

Fed. R. Civ. P. 12(b)(6) ................................................................................. 5-6

Fed. R. Civ. P. 15(c)(1)(C) ..............................................................................18

Fed. R. Civ. P. 23(d)(1)(D) ..............................................................................22

## S<small>TATUTES</small>

N.Y. Gen. Bus. Law § 349 .................................................................................20-21

18 U.S.C. § 1954.............................................................................................20

18 U.S.C. §§ 1964, 1962 ...................................................................................20

29 U.S.C. § 1002(21)(A)..............................................................................8-9, 12

29 U.S.C. § 1102(a) ..........................................................................................9

29 U.S.C. § 1109...........................................................................................8-9

29 U.S.C. § 1113..............................................................................................18

29 U.S.C. § 1144(a) ..........................................................................................21

29 U.S.C. § 1132(a)(3).......................................................................................17

## I.      INTRODUCTION

Plaintiff's Amended Complaint takes aim at his former law firm Clifford Chance US LLP ("Clifford Chance") and the Merrill Lynch defendants[1] for allegedly selecting a menu of "high fee" investment options in Clifford Chance's ERISA-governed retirement plan and engaging in revenue sharing, a common and accepted industry practice.  Following the dismissal of his original complaint against Merrill Lynch, pro se plaintiff Craig M. Walker ("Plaintiff") now presents a smattering of factual allegations against newly-added defendant Capital Strategies Investment Group ("Capital Strategies") that, in total, illustrate how Capital Strategies benefited the plan by recommending that the plan add a low-fee, passively managed fund to its menu in 2012, and helping to lower revenue sharing payments.  In so doing, Plaintiff fails to create a plausible inference that Capital Strategies' conduct or role with the plan gave rise to any ERISA fiduciary responsibilities, let alone a breach of the same.  Nor does Plaintiff state any other cognizable claim against Capital Strategies.

Further, Plaintiff's claims are time-barred and improperly framed as a putative class action because Plaintiff cannot serve as both the putative class representative and class counsel.  Thus, Plaintiff's Amended Complaint should be dismissed with prejudice in its entirety.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff is a practicing attorney and former partner of Rogers & Wells LLP and Clifford Chance U.S. LLP.  See Craig M. Walker Attorney Profile, available at

---

[1]   References to "Merrill Lynch" or the "Merrill Lynch defendants" throughout this Memorandum are solely for ease of reading, and are not intended to disregard the separate corporate identities of the four defendants other than Capital Strategies.

[2]   Capital Strategies accepts as true the factual allegations in the Amended Complaint only for purposes of this Motion.  Cf. Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

http://www.craigwalkerlaw.com/attorney-profile/ (last visited July 10, 2016).  He is also a

participant in the "Clifford Chance 401(k) Retirement Savings Plan" (hereinafter, the "Plan"),

subject to the Employee Retirement Income Security Act ("ERISA").  Am. Compl. ¶¶ 35, 65-66.

       The Amended Complaint primarily focuses on the alleged "scheme" of Clifford

Chance, the employer and Plan Sponsor, and the Merrill Lynch defendants, who served as

service provider and non-discretionary trustee for the Plan.   Am. Compl. ¶¶ 7-10, 21, 35-39, 65.

Plaintiff suggests that for over a decade, pursuant to a Trust Agreement between Clifford Chance

and Merrill Lynch governing the investment of the Plan's retirement assets, the Plan paid

"revenue sharing fees" from actively managed funds to Clifford Chance and Merrill Lynch, and

kept out "competitive low-fee passively managed funds" which did not make such payments.  Id.

¶¶ 20-23, 88-89.  The revenue sharing payments are based "on a percentage of the retirement

plan's investments in a mutual fund," described as "services fees" which supposedly "bear

absolutely no relationship to the cost or value of" the services.  Id. ¶¶ 60-61.  These fees are

characterized by Plaintiff as "kickbacks," but are identified in fee disclosure documents as

Service Fees.  Id. ¶¶ 7, 9, 18-20.

       Clifford Chance always retained final authority for the Plan investments subject to

the purported "scheme."  According to Plaintiff, in 2008, Clifford Chance and Merrill Lynch

entered into an agreement titled "Application for Plan Services," which describes the relationship

of the Plans.  Id. ¶¶ 12-21 (discussing D.I. 16-1 and 16-2, collectively, the "Agreement").  The

referenced Agreement specifies that Clifford Chance retained Merrill Lynch as a "non-

discretionary directed Trustee of the Plan" (D.I. 16-1, at 1), and explains that Clifford Chance is

capable of evaluating the proposed investments by the Plan and has the authority to approve or

disapprove of such investments.  (D.I. 16-2, "Retirement Preservation Trust Purchase

Agreement," Sections D and G at C3, as incorporated from the "Application for Plan Services", D.I. 16-1 at A2).  The Agreement makes clear that final authority for all investment decisions rests with Clifford Chance.  (See D.I. 16-1, Part III, Fund Selection and Mapping).

The Amended Complaint offers an incomplete picture regarding the investment options actually available through the Plan from 2008 to the present.  Plaintiff highlights that Merrill Lynch's fund network "includes over 3000 mutual fund an [sic] collective trust investment options maintained by Merrill Lynch that are made available to plan sponsors for their 401(k)s."  Am. Compl. ¶ 50.  Later, Plaintiff provides a sampling of what he considers to be "high fee" funds that were available to Plan participants, and states that the Plan menu contained one low-fee index fund as of 2012, and four low-fee index funds as of 2015.  Id. ¶¶ 114-15, 126, 132.  He does not identify the full menu of funds available to Clifford Chance or a complete list of funds offered to Plan participants.

Although Plaintiff repeatedly suggests that the "scheme" was fraudulently concealed from him, e.g., id. ¶ 29, the Amended Complaint provides examples of disclosure.  For one, Plaintiff quotes a 2008 Merrill Lynch mutual fund fee disclosure statement explaining that its "fund families pay Merrill Lynch a Service Fee equal to the product of twenty basis points (0.20%) and [sic] annual average assets invested in the fund."  Id. ¶¶ 18-19.  Similarly, Plaintiff cites to a 2012 Plan disclosure document that explains the Plan's service provider "may receive investment-related revenue from one or more of the Plan's investment [sic] for providing the above-described administrative services.  The Plan Sponsor and service provider have agreed upon 0.1150% of Plan Assets."  Id. ¶ 129.  Elsewhere, in purporting to offer an example of the revenue sharing payments, Plaintiff alleges that during one year, while managing the Plan's $137 million in assets, Merrill Lynch received $178,000 in fees, or 0.13% of the aggregate assets

invested under the Plan, and Clifford Chance received $133,000. Id. ¶ 11. In providing these figures, Plaintiff cites to a matrix showing each mutual fund's revenue sharing arrangement, "ranging from 9 [bps] to 51 bps." Id.  Plaintiff does not allege that the disclosed figures were inaccurate.  Further, Capital Strategies is not alleged to have received any fees at all – whether labeled as revenue sharing, service fees or "kickbacks."

As for the role and conduct of Capital Strategies, Plaintiff's allegations are sparse[3] and secondary to the "scheme."  Plaintiff does not point to any Plan documents identifying Capital Strategies as a fiduciary.  Further, Capital Strategies is not a party to Clifford Chance's agreements with Merrill Lynch, which date back to 1997 and pre-date Capital Strategies' role with the Plan. Id. ¶¶ 6, 78, 126; see Agreement.  Instead, Plaintiff alleges only that Capital Strategies is "a co-fiduciary of the Plan," "provides investment advice to the Plan Sponsor" in the form of fund selection analysis and recommendations, and was allegedly "required to work within the Merrill Lynch scheme and structure." Id. ¶¶ 27, 41, 110, 136.  Plaintiff contends that Capital Strategies had "an absolute fiduciary duty to include in the menu offering low-fee passively managed index funds," but instead took "steps to prevent the Plan menu" from including such funds and "knew" that such funds were being "excluded from the Plan Menu as a result of the Merrill scheme." Id. ¶ 33, 136-137.  Plaintiff emphasizes that "[t]he claims [against Capital Strategies] do not focus on the specific fund selection, except that all selections were made within the parameters of the Merrill scheme." Id. ¶ 136.

Importantly, and somewhat inconsistently, Plaintiff admits that in 2012, Capital Strategies "recommended replacing the Merrill Equity Index Trust with the Vanguard Total

---

[3]   Only 14 of the 182 paragraphs in the Amended Complaint reference Capital Strategies: 27, 33, 41, 110, 115, 117, 126, 127, 136-138, 166, 168, and 172.

Stock Market Index," and quotes Capital Strategies' recommendation that "We believe that Clifford Chance should adopt 'the best practice' of offering the lowest alternative 'in the index space.'" Id. ¶ 115.  Plaintiff further highlights an announcement by Merrill Lynch advising that Clifford Chance decided to replace the Merrill Lynch fund with the Vanguard fund effective March 16, 2012, id. ¶ 114, demonstrating that (i) Clifford Chance, as Plan Sponsor, adopted the recommendation of Capital Strategies and (ii) the Plan contained at least one low-fee passively managed index fund as of March 16, 2012.  Plaintiff also alleges that Capital Strategies participated in negotiations that resulted in the lowering of payments being made by the Plan to Merrill Lynch.  Id. ¶ 138.  Plaintiff does not identify the damages he allegedly believes resulted from Capital Strategies' conduct.

Capital Strategies was not named as a defendant in Plaintiff's original complaint, which this Court dismissed by Opinion and Order dated March 25, 2016.  (D.I. 21).  Rather, Plaintiff first sued Capital Strategies in the Amended Complaint filed May 17, 2016.  (D.I. 28, 31).  Here, Plaintiff seeks to advance this lawsuit as representative of a class consisting of all ERISA pension benefits plans with a Merrill Lynch trust agreement, and a sub-class consisting of the Plan and its participants and beneficiaries.  Am. Compl. ¶ 145.  There is no nexus between Capital Strategies and the class definitions, other than Capital Strategies' involvement with the Plan.  Plaintiff purports to serve as lead plaintiff and lead counsel for the class and sub-class in pursuit of monetary, equitable, declaratory and injunctive relief against all defendants.

## III.  MOTION TO DISMISS STANDARD

A complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) unless it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  These factual allegations must be "sufficient 'to

raise a right to relief above the speculative level.'" <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F. 3d 87, 98 (2d Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555). While all material factual allegations are accepted as true, the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, <u>they must be supported by factual allegations</u>." <u>Id.</u> at 679. (Emphasis added).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Port Dock & Stone Corp. v. Oldcastle Ne., Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007) (citing <u>Twombly</u>, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed. <u>Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.</u>, 712 F.3d 705, 718 (2d Cir. 2013) (citations omitted). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 679).[4]

---

[4]   "When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." <u>Brass v. Am. Film Tech., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted).

## IV.    ARGUMENT

The pleading infirmities of Plaintiff's original complaint redouble in the Amended Complaint as to Capital Strategies.  Plaintiff's primary grievances are directed at Clifford Chance, for allegedly selecting "only" high-fee, actively managed investment funds for the Plan in violation of Clifford Chance's fiduciary duty, and with Clifford Chance and Merrill Lynch for collectively receiving revenue sharing payments pursuant to their contractual arrangement.   As for Capital Strategies, in contrast to his legal conclusions, Plaintiff's factual allegations show that Capital Strategies acted <u>beneficially</u> for the Plan by recommending that the Plan offer a low-fee index fund, and helping lower the revenue sharing payments to Clifford Chance and Merrill Lynch.

These allegations do not amount to any viable claims against Capital Strategies. <u>First</u>, Capital Strategies is not an ERISA fiduciary for purposes of its role in fund selection or lowering the revenue sharing payments to Clifford Chance and Merrill Lynch, the only conduct allegedly undertaken by Capital Strategies in the Amended Complaint.  <u>Second</u>, Plaintiff has not alleged facts demonstrating any "knowing participation" by Capital Strategies in the alleged ERISA fiduciary breaches by Merrill Lynch, nor identified any possible damages arising from conduct by Capital Strategies.  <u>Third</u>, the ERISA claims are time-barred due to Plaintiff's actual knowledge of the Plan's investment menu and Capital Strategies' role in selecting investment options more than three years before suing Capital Strategies.  <u>Fourth</u>, Plaintiff's state law claim for deceptive trade practice fares is preempted by ERISA and inadequately pleaded.  <u>Fifth</u>, and finally, in the event that any claims survive this Motion, all class allegations must be stricken because Plaintiff is impermissibly proceeding as a class representative and class counsel.

A.      **Plaintiff has failed to state an ERISA breach of fiduciary duty claim against Capital Strategies**

Alleging that Capital Strategies violated ERISA by generally breaching fiduciary duties, Plaintiff ignores a basic principle of ERISA fiduciary law: that entities are fiduciaries only "to the extent" they do (or have authority to do) certain things. See 29 U.S.C. § 1002(21)(A). As Plaintiff admits, while Capital Strategies "did the fund analysis and fund selection for a period" of time, Plaintiff's claims "do not focus on the specific fund selection, except that all selections were made within the parameters of the Merrill scheme." Fund selection, without more, is not a fiduciary function, and thus cannot give rise to a claim for fiduciary breach. Plaintiff does not (and could not) allege that Capital Strategies had discretionary authority to manage Clifford Chance's Plan, had "final say" over the selection of all investment options under the Plan, or received revenue sharing payments from the Plan's funds. The absence of such facts are fatal to Plaintiff's claim.

"To state a claim for breach of a fiduciary duty, a plaintiff must allege that (1) the defendant was acting as a fiduciary of the plan, (2) the defendant breached that duty, and (3) the breach caused harm to the plaintiff." Laboy v. Bd. of Trustees of Bldg. Serv. 32 BJ SRSP, 513 F. App'x 78, 79 (2d Cir. 2013) (citing Pegram v. Herdrich, 530 U.S. 211, 225–26 (2000)). Only a "fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" can be held "personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a).

In every case charging breach of ERISA fiduciary duty, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." Pegram, 530

U.S. at 226; <u>Coulter v. Morgan Stanley & Co. Inc.</u>, 753 F.3d 361, 366 (2d Cir. 2014); <u>see also</u> 29

U.S.C. §§ 1002(21)(A), 1109.  This inquiry is key because "a person may be an ERISA fiduciary

with respect to certain matters but not others, for he has that status only 'to the extent' that he has

or exercises the described authority or responsibility."  <u>Harris Trust & Sav. Bank v. John</u>

<u>Hancock Mut. Life Ins. Co.</u>, 302 F.3d 18, 28 (2d Cir. 2002) (quoting <u>F.H. Krear & Co. v.</u>

<u>Nineteen Named Trustees</u>, 810 F.2d 1250, 1259 (2d Cir. 1987)); <u>see also</u> <u>Siskind v. Sperry Ret.</u>

<u>Program, Unisys.</u>, 47 F.3d 498, 505 (2d Cir. 1995) ("[O]nly when fulfilling certain defined

functions, including the exercise of discretionary authority or control over plan management or

administration," does a person become a fiduciary under ERISA).

              Unless a plan names the defendant as a fiduciary, which is not the case here for

Capital Strategies,[5] an ERISA fiduciary duty may only be imposed if the defendant is acting as a

functional fiduciary.  <u>Leimkuehler v. Am. United Life Ins. Co.</u>, 713 F.3d 905, 910 (7th Cir.

2013).  Under ERISA, a functional fiduciary is an entity that "(i) exercises any discretionary

authority or discretionary control respecting management of [a] plan or exercises any authority

or control respecting management or disposition of its assets, (ii) [] renders investment advice for

a fee or other compensation, direct or indirect, with respect to any moneys or other property of

such plan, or has any authority or responsibility to do so, or (iii) [] has any discretionary

authority or discretionary responsibility in the administration of such plan."  29 U.S.C. §

1002(21)(A); <u>Apogee Enters., Inc. v. State St. Bank & Trust Co.</u>, No. 09 CIV 1899 RJH, 2010

WL 3632697, at *2 (S.D.N.Y. Sept. 17, 2010).  An entity only falls within subsections (i) and

---

[5]    ERISA provides that a person is a fiduciary to a plan if the plan identifies them as such.  <u>See</u>
29 U.S.C. § 1102(a).  Here, Plaintiff does not allege that the applicable Plan documents
identify Capital Strategies as a fiduciary, only that Capital Strategies is generically a
"fiduciary."

(iii) if it possesses "final authority to make decisions for the plan or [has] control over plan assets." Apogee Enters., 2010 WL 3632697, at *2 (emphasis added) (comparing Hecker v. Deere & Co., 556 F.3d 575, 583-84 (7th Cir. 2009) (where defendant service provider did not have final say over list of options made available to plan participants) with LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997) (where defendant administrator had direct power to use plan funds to pay creditors)).

There is an important difference between a firm that exercises "final authority" over the choice of funds, on one hand, and a firm that simply "played a role" in the process, on the other hand: the latter simply does not rise to the level of fiduciary conduct. See Hecker, 556 F.3d at 583-84. Responsibilities like compiling reports about a plan's investments, providing advice about investment options, or selecting funds to include in a particular plan, without more, do not give rise to fiduciary responsibility. Apogee Enters., 2010 WL 3632697, at *2 (citing 29 C.F.R. § 2509.75-8); Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A), 768 F.3d 284, 295 (3d Cir. 2014), cert. denied sub nom., 135 S. Ct. 1860 (2015); Leimkuehler , 713 F.3d at 910-11 ("selecting both funds and their share classes for inclusion on a menu of investment options offered to 401(k) plan customers" is not a fiduciary function).

Here, Capital Strategies is not plausibly alleged to be a functional fiduciary for the Plan. Capital Strategies is not alleged to have "final authority" to make decisions for the Plan or to have control over Plan assets. Nor is Capital Strategies alleged to have final authority over the total mix of investments available to participants under the Plan, authority that is vested in Clifford Chance. Am. Compl. ¶ 96, 114. (See also D.I. 16-1, Part III, Fund Selection and Mapping; D.I. 16-2, "Retirement Preservation Trust Purchase Agreement," Sections D and G at C3, as incorporated from the "Application for Plan Services", D.I. 16-1 at A2). Plaintiff only

generically alleges that Capital Strategies "did fund analysis and fund selection for a period of

the class period," "worked within the Merrill Lynch scheme," and "was involved in negotiations

of the amount Merrill Lynch would receive from" revenue sharing payments – payments that

were subject to and disclosed in the Plan documents by August 2012 at the latest.[6]  Am. Compl.

¶¶ 41, 129, 136-138.  At best, these allegations amount to "playing a role" – and certainly not

one clothed in control, discretion, or fiduciary responsibility.

   Moreover, the only factual example of Capital Strategies' conduct set forth in the

Amended Complaint illustrates benefits, not harm, to the Plan under Plaintiff's case theory:

Capital Strategies recommended that Clifford Chance select a Vanguard Total Stock Market

Fund, which did not have a revenue sharing component, for the Plan menu.  Am. Compl. ¶ 115.

Clifford Chance adopted the recommendation and added the Vanguard Fund as an investment

option for the Plan effective March 16, 2012, which lowered the Plan's total revenue sharing

payments.[7]  Id. ¶ 114; Cf. id. ¶ 138.  Thus, even if Capital Strategies were a functional fiduciary

---

[6] Revenue sharing is "used to cover a portion of the costs of services provided by an entity
such as a trustee of a 401(k) plan, and is not uncommon in the industry."  Braden v. Wal-
Mart Stores, Inc., 588 F.3d 585, 590 (8th Cir. 2009); Leimkuehler, 713 F.3d at 910
(discussing revenue sharing and expense ratios as typical method of compensation for
employer and investment advisor for providing ERISA retirement plan investment services)
see also Renfro v. Unisys Corp., 671 F.3d 314, 323 (3d Cir. 2011) (mix of investment fund
expense ratios ranging from 0.1% to 1.21% did not give rise to claim for employer's breach
of loyalty and prudence in selecting funds for plan).

[7] To the extent Plaintiff contends that Capital Strategies took on a fiduciary role with respect to
any revenue sharing between Clifford Chance and Merrill Lynch, such a contention is
unsupported by any factual allegations and legally invalid for the same reasons that Capital
Strategies' fund selections do not give rise to a fiduciary duty.  See also Santomenno, 768
F.3d at 293 (3d Cir. 2014) (investment advisor's fund selections and expense ratios are
"product design" features that do not give rise to fiduciary duty).

(which it is not), the only factual allegations (as opposed to legal conclusions) in the Amended

Complaint about Capital Strategies illustrate conduct that Plaintiff heralds as desirable.[8]

       With respect to classifying a functional fiduciary under subsection (ii) of 29

U.S.C. § 1002(21)(A) pertaining to investment advice, in order to plead that a defendant is a

fiduciary because it provided investment advice for a fee, a plaintiff must establish that "(1) the

defendant provided individualized investment advice; (2) on a regular basis; (3) pursuant to a

mutual agreement, arrangement or understanding that (4) the advice would serve as a primary

basis for the plan's investment decisions; and (5) the advice was rendered for a fee."  F.W. Webb

Co. v. State St. Bank & Trust Co., No. 09 CIV. 1241 RJH, 2010 WL 3219284, at *8 (S.D.N.Y.

Aug. 12, 2010); see also 29 C.F.R. § 2510.3-21 (regulation describing circumstances under

which a person is deemed an ERISA fiduciary for providing investment advice).

       The Amended Complaint does not come close to satisfying the pleading standard

for Capital Strategies to be considered an investment advisor functional fiduciary.  Aside from

labeling Capital Strategies as an "investment advisor," Am. Compl. ¶ 41, and pointing out that

Capital Strategies recommended that the Plan replace a Merrill Lynch fund with a Vanguard

fund, id. ¶ 115, the Amended Complaint is devoid of the requisite facts to treat Capital Strategies

as fiduciary investment advisor under ERISA.  Plaintiff does not identify any fees rendered to

Capital Strategies and does not suggest that Capital Strategies provided investment advice on any

---

[8]    Plaintiff's legal conclusion that there "was an absolute fiduciary duty of Merrill Lynch, Cap[ital] Strategies, and the Plan Sponsor to have a broad array of those low-fee index funds in the Plan- instead they ran the Plan for revenue sharing kickbacks," Am. Compl. ¶ 127, is neither legally nor factually sound.  First, Capital Strategies is not a functional fiduciary with respect to the mix of investments options under the Plan.  Second, Capital Strategies is not alleged to have shared in the revenue payments, and nowhere does Plaintiff allege how or why Capital Strategies had a duty to monitor those payments or would have reason or motivation to enrich Merrill Lynch or Clifford Chance.

periodic or regular basis.  Nor does Plaintiff describe any agreement, arrangement or understanding pursuant to which Capital Strategies agreed to provide advice that would serve as the primary basis for any investment decisions made by the Plan.   Accordingly, Capital Strategies does not qualify as a functional fiduciary for purposes of Plaintiff's claims.

       This conclusion is supported by the Court's March 2016 dismissal opinion, and cases discussed therein rejecting the notion that a service provider becomes an ERISA fiduciary by recommending a roster of funds to a Plan Sponsor, applying the widely-adopted reasoning of Hecker.  (See D.I. 21, at 10-11 and n. 4, identifying New York and federal appellate cases finding Hecker's reasoning persuasive).  In Hecker, like here, plaintiffs claimed breach of an investment advisor's fiduciary duty for selecting funds with unreasonably high fees and expense ratios.  Hecker v. Deere & Co., 556 F.3d 575, 580-81 (7th Cir. 2009).  The appellate court disagreed, explaining that playing a role in the selection of investments options or furnishing professional advice is not enough to transform an advisor into a functional fiduciary where the plan sponsor retains final authority over plan investments.  Id. at 583-84.  Put differently, where a plan sponsor retains final authority over the selection of funds, an advisor's recommendation regarding those selections does not create fiduciary responsibility in the advisor.  Id. at 584; see also Renfro v. Unisys Corp., 671 F.3d 314, 323 (3d Cir. 2011) (directed fiduciary Fidelity "had no contractual authority to control the mix and range of investment options, to veto [employer] Unisys's selections, or to constrain Unisys from including other investment options in the plan administered by an entity other than Fidelity.  It therefore did not a function as a fiduciary with respect to selecting and maintaining the range of investment options in the plan.").

       Perhaps responding to the Court's Opinion, Plaintiff suggests in his Amended Complaint that Braden is more in line with the facts presented than Hecker.  Not so.  In Braden,

the putative class sued the ERISA retirement plan sponsor and administrator, Wal-Mart, and Wal-Mart executives, who were named fiduciaries pursuant to the plan documents and responsible for the operation, investment policy and administration of the plan. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 589 (8th Cir. 2009). Here, Plaintiff has not sued the Plan Sponsor, Clifford Chance, which has fiduciary responsibilities similar to Wal-Mart according to the Amended Complaint and documents referenced therein. See, e.g., Am. Compl. ¶¶ 13, 17. In Braden, the particular fiduciary duties ascribed to Wal-Mart under the plan documents formed the basis of the fiduciary breach claims asserted, namely the process of Plan management, to which general fiduciary duties of loyalty and prudence attached. Id. at 596. Here, in contrast, the conduct at the center of the Amended Complaint – the ultimate selection of investment funds made available to Plan participants, which provided for revenue sharing payments – is squarely within the province of Clifford Chance, the Plan Sponsor and named fiduciary for such purposes. Am. Compl. ¶ 13, 17. All told, Plaintiff has failed to allege a fiduciary breach claim against Capital Strategies.

### B.    Plaintiff has not pleaded a viable claim against Capital Strategies for knowing participation in Merrill Lynch's alleged breach of fiduciary duty[9]

Plaintiff's alternative ERISA theory against Capital Strategies does not pass muster either. In Count II, Plaintiff appears to suggest that if Capital Strategies is not deemed an

---

[9]   Although the Amended Complaint does not state a claim for co-fiduciary liability, the concept is referenced in the heading of Count II. Such a claim is not viable against Capital Strategies. The co-fiduciary rule requires the plaintiff to plead facts establishing that "the fiduciary must know the other person is a fiduciary with respect to the plan, must know that he participated in the act that constituted a breach, and must know that it was a breach." Renfro v. Unisys Corp., 671 F.3d 314, 324 (3d Cir. 2011) (quoting Donovan v. Cunningham, 716 F.2d 1455, 1475 (5th Cir. 1983)). Plaintiff's claim against Capital Strategies fails because (i) Capital Strategies is not a fiduciary with respect to the conduct alleged in the complaint, and (ii) Plaintiff does not contend that Capital Strategies participated in the acts that allegedly constituted a breach, namely the revenue sharing payments.

ERISA fiduciary, it should be held liable for its alleged knowing participation in Merrill Lynch's fiduciary breaches.  The Amended Complaint does not support such a claim.

In order to state a claim for knowing participation in a fiduciary's breach, a plaintiff must allege that (1) a fiduciary breached a duty owed; (2) the defendant knowingly participated in the breach; and (3) damage resulted.  SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 342 (2d Cir. 2004) (citing Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 282–83 (2d. Cir. 1992)).  The knowledge element requires a showing that the defendant "(1) knew of the primary violator's status as a fiduciary and (2) knew that the primary violator's conduct contravened a fiduciary duty."  Leber v. Citigroup, Inc., No. 07 CIV. 9329 (SHS), 2010 WL 935442, at *14 (S.D.N.Y. Mar. 16, 2010) (citing Diduck, 974 F.2d at 282–83).  Where a plaintiff fails to plead with any specificity who, how or why a non-fiduciary knew or should have known about the primary violator's breaching conduct, the claim must be dismissed.  Id. at *14.

As an initial matter, Capital Strategies incorporates by reference the arguments raised by the Merrill Lynch defendants in their motion to dismiss papers contemporaneously filed, establishing that the Amended Complaint has not adequately stated a breach of fiduciary duty claim against the Merrill Lynch defendants.  For this reason alone, Count II fails, for without a breach of fiduciary duty, there can be no knowing participation in that breach.

Even assuming a fiduciary breach claim is stated as to the Merrill Lynch defendants, however, the Amended Complaint does not allege facts creating a plausible inference that Capital Strategies knowingly participated in those alleged breaches.  Plaintiff generically alleges that Capital Strategies "knew that low fee passively managed index funds were being excluded from the Plan Menu" and "knew the levels" of revenue sharing "were excessive."  Am.

Compl. ¶¶ 137-38.  Neither of these facts demonstrate knowledge of the scope of Merrill

Lynch's fiduciary status or its breach of any accompanying fiduciary duties.

   First, revenue sharing payments are a form of compensation to Merrill Lynch, and

even if Merrill Lynch was a fiduciary, an ERISA service provider "owes no fiduciary duty with

respect to the negotiation of its fee compensation."  <u>Santomenno</u>, 768 F.3d at 295 (quoting

<u>Renfro</u>, 671 F.3d at 324); <u>see also</u> <u>Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.</u>,

302 F.3d 18, 31 (2d Cir. 2002) (reversing finding that insurance company's "collection of its

agreed-upon compensation under the Contract was a breach of its fiduciary duties"); <u>F.W. Webb</u>,

2010 WL 3219284, at *5-7 (holding that service provider's offering of investment options and

receipt of revenue sharing did not establish fiduciary status); <u>Leimkuehler</u>, 713 F.3d at 911-12

(affirming summary judgment in favor of service provider because it was not acting as an ERISA

fiduciary when it received revenue sharing).  Accordingly, Capital Strategies cannot be liable for

participation in an activity that is unburdened by a fiduciary duty.

   Second, there are no factual allegations stating how or when Capital Strategies

"knew" that low-fee index funds were being "excluded" from the menu offering, nor that such

"exclusion" was subject to a fiduciary duty by Merrill Lynch, particularly in 2012, when Capital

Strategies actively recommended the Plan menu <u>include</u> a low-fee index fund.  Stated differently,

Plaintiff has not pleaded facts showing that Capital Strategies played any "knowing" role in the

alleged breach by Merrill Lynch.  Plaintiff's allegations merely establish Capital Strategies'

knowledge of the Plan's relationship with Merrill Lynch, and no more.

   Further, as discussed above, the actual facts pleaded by Plaintiff tend to laud

Capital Strategies, rather than discredit it.  In the same breath that Plaintiff alleges that Capital

Strategies knew Merrill Lynch's revenue sharing payments were high, Plaintiff acknowledges

that Capital Strategies "participated in getting those levels lowered."  Id. ¶ 138.  Moreover, according to Plaintiff, Capital Strategies advised Clifford Chance in 2012 that it "should adopt 'the best practice' of offering the lowest alternative 'in the index space[.]'"  Id. ¶ 115.  These are not the actions of a knowing participant in an alleged breach of a fiduciary duty.  Instead, these actions are in line with those desired by Plaintiff.

Finally, even if Plaintiff could demonstrate knowing participation by Capital Strategies in a fiduciary breach by Merrill Lynch, which he cannot, Plaintiff has not identified any appropriate relief that could be granted.  Non-fiduciaries who knowingly participate in a fiduciary breach cannot be liable for ordinary money damages; rather, ERISA limits the remedy to "appropriate equitable relief," generally disgorgement or restitution of trust property received by the non-fiduciary.  29 U.S.C. § 1132(a)(3); Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 250 (2000) (describing appropriate equitable relief against a non-fiduciary as restitution of trust property (if not already disposed of) or disgorgement of proceeds (if already disposed of)); Gerosa v. Savasta & Co., 329 F.3d 317, 322 (2d Cir. 2003).  Such a claim requires a showing "that the defendant has unjustly received from the plaintiff a benefit . . . or that the defendant holds funds or property that in good conscience should belong to the plaintiff[.]"  Gerosa, 329 F.3d at 321 (citations omitted).  Here, Plaintiff does not allege that Capital Strategies shared in Merrill Lynch's revenue sharing payments or otherwise received any trust property, much less trust property that "in good conscience" belongs to Plaintiff.  Put differently, Plaintiff has not, and cannot, allege a claim for disgorgement or restitution against Capital Strategies.  Accordingly, Plaintiff's claim against Capital Strategies for knowingly participating in an ERISA fiduciary breach should be dismissed.

### C.    Plaintiff's ERISA-based claims are time-barred

Separately, Counts I and II should be dismissed because Plaintiff filed suit against Capital Strategies on May 17, 2016, more than three years after Plaintiff had actual knowledge of the facts that he suggests amount to Capital Strategies' alleged breach of a fiduciary duty and knowing participation in Merrill Lynch's breach of fiduciary duty.[10]

A plaintiff must bring an action for breach of a fiduciary duty under ERISA within the earlier of (1) six years of the breach or (2) three years after the earliest date plaintiff knew of the breach, unless the six-year "fraud or concealment" exception applies. See 29 U.S.C. § 1113. A plaintiff has the requisite knowledge of the breach within the meaning of § 1113(2) when he "has knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." Boban v. Bank Julius Baer Postretirement Health & Life Ins. Program, 723 F. Supp. 2d 560, 564 (S.D.N.Y. 2010) (quoting Caputo v. Pfizer, Inc., 267 F.3d 181, 193 (2d Cir. 2001)).

Here, Plaintiff's claim for breach of fiduciary duty expired three years after Plaintiff learned that (i) Clifford Chance did not offer what he considers low-fee index funds, (ii) Capital Strategies was involved in the fund selection process, and (iii) Plaintiff knew the level of fees charged by the funds in the Plan. See, e.g., Young v. Gen. Motors Inv. Mgmt. Corp., 550 F.

---

[10]    Where a party is later added to an action, the Federal Rules of Civil Procedure only permit relation back to the filing date of the original complaint for statute of limitations purposes if (1) "a claim or defense arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading;" (2) within 90 days the new party "received such notice of the action that it will not be prejudiced in defending on the merits;" and (3) within 90 days the new party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C); Fed. R. Civ. P. 4(m). None of these exceptions apply here. Thus, the filing date of the original complaint holds no weight for statute of limitations purposes, and the filing date of the Amended Complaint is the operative date for the claims against Capital Strategies.

Supp. 2d 416, 420 (S.D.N.Y. 2008), aff'd, 325 F. App'x 31 (2d Cir. 2009) (dismissing claim as time-barred where "allegedly excessive fees that form the central basis of this claim were readily apparent from the information provided to all Plan participants more than three years before Plaintiffs filed this suit."). These facts were known to Plaintiff by no later than March of 2012. As a Plan participant, information about the mix of investment options in the Plan has always been available to Plaintiff, and by no later than 2012, the revenue sharing arrangements were disclosed to all plan participants. Am. Compl. ¶¶ 18-19 (discussing how Merrill Lynch disclosure in 2008 alerted plan participants that fund families pay service fees of 0.20% of fund assets). Indeed, in 2012, Plaintiff received a Plan disclosure document explaining that Merrill Lynch would receive investment-related revenue from the Plan for providing administrative services in the agreed-upon amount of 0.1150% of Plan Assets. Id. ¶ 129. Plaintiff was equally aware that Capital Strategies assisted Clifford Chance with fund selection as early as 2009, and certainly by 2012, when Plaintiff alleges Capital Strategies recommended replacing a Merrill Lynch fund with a Vanguard fund in the Plan's investment offerings. Id. ¶¶ 115, 126. Despite these repeated disclosures, Plaintiff waited until May 17, 2016 to bring his ERISA-based claims against Capital Strategies. Thus, Counts I and II are time-barred.

Further, the "fraud or concealment" exception extending the three-year limitation period to six years does not apply here. This exception only applies where a fiduciary: "(1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." Caputo, 267 F.3d at 190 (citations omitted). A plaintiff must plead these facts with the requisite particularity. Id. at 191; Fed. R. Civ. P. 9(b).

Although Plaintiff's Amended Complaint repeatedly suggests that the "scheme" was "concealed" from Plan participants, e.g., Am. Compl. ¶ 179, the disclosures discussed above directly conflict with that characterization.  Moreover, the labeling of the "scheme" as "fraudulent" is a legal conclusion that also lacks the specificity required by the Federal Rules. Plaintiff illogically asserts that Defendants concealed the fee sharing scheme while providing examples of disclosure, and suggests that Plan participants were "misled" about their investment options because they were "trapped" by the menu choices.  See id. ¶ 179.  However, as a Plan participant, Plaintiff was plainly aware of the mix of investment options available under the Plan, and received multiple disclosures related to Merrill Lynch's revenue sharing payments. Moreover, nowhere in the Amended Complaint does Plaintiff identify the time, place, speaker, and content of any misrepresentations, or provide sufficiently specific facts explaining how or why Capital Strategies caused Plaintiff to act detrimentally or somehow defrauded Plaintiff. Without these facts, Plaintiff has failed to adequately plead why the six year statute of limitations should apply.

### D.    ERISA pre-empts Plaintiff's inadequately-pleaded state law claim for deceptive practices[11]

Just as Plaintiff's ERISA-based claims must fail, Plaintiff's claim for a deceptive trade practice under N.Y. Gen. Bus. Law § 349 cannot survive, as it is preempted by ERISA, inadequately pleaded, and time-barred.

---

[11]   Count III of the Amended Complaint makes passing reference to a violation of 18 U.S.C. § 1954, the federal statute codifying the crime of improperly influencing an ERISA plan through bribery.  This statute does not provide Plaintiff with a private right of action.  To the extent Plaintiff imagines this to be a RICO claim, he has not articulated any basis upon which he may pursue a civil remedy for this purported violation, which is wholly undeveloped in his Amended Complaint.  See, e.g., 18 U.S.C. §§ 1964, 1962 (limiting civil actions to specific patterns of RICO activities).

First, ERISA explicitly "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]"  29 U.S.C. § 1144(a).  Thus, all common law causes of action that "relate to" an employee benefit plan fall under ERISA's express preemption clause.  Pilot Life Ins. v. Dedeaux, 481 U.S. 41, 47–48 (1987) (noting that "the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans' ") (citation omitted).   Thus, ERISA preempts a claim for deceptive business practices where plaintiff's claims relate to an employee benefit plan.  See Costa v. Astoria Fed. Sav. & Loan Ass'n, 995 F. Supp. 2d 146, 154-55 (E.D.N.Y. 2014) (dismissing N.Y. General Business Law § 349 claim on grounds of ERISA preemption) (collecting cases).  As Plaintiff's entire Amended Complaint centers upon the Plan, ERISA preempts his state law claim for a deceptive trade practice.[12]

Separately, Plaintiff's deceptive trade practice claim is inadequately pleaded. Under N.Y. Gen. Bus. Law § 349(a), "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."  In order to successfully allege a claim under this statute, "a plaintiff must plead facts capable of establishing that '(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'"  Lenard v. Design Studio, 889 F. Supp. 2d 518, 530 (S.D.N.Y. 2012) (quoting Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)).  Further, the deceptive acts alleged must be "actual

---

[12]   "ERISA bars only state law claims against fiduciaries; state law claims against non-fiduciaries escape preemption."  United Teamster Fund v. MagnaCare Admin. Servs., LLC, 39 F. Supp. 3d 461, 472 (S.D.N.Y. 2014).  Still, even if Capital Strategies is deemed a non-fiduciary, Plaintiff's deceptive trade practice claim should be dismissed because it is inadequately pleaded and untimely.

misrepresentations (or omissions), made to consumers, in New York." Id. (citing Goshen v. Mut. Life Ins. Co., 774 N.E.2d 1190, 1195 (N.Y. 2002).

       Fundamentally, the Amended Complaint does not specifically allege that Capital Strategies engaged in any misleading acts, nor had any communication directly with any consumer in New York. Plaintiff does not identify a single instance where Capital Strategies engaged in consumer-oriented conduct, no less how such conduct was supposedly deceptive. Instead, the only factual allegations about Capital Strategies demonstrate it participated in the fund selection process for the Plan and made recommendations to Clifford Chance to lower the revenue sharing payments due to Clifford Chance and Merrill Lynch. E.g., Am. Compl. ¶¶ 136-138. Accordingly, Plaintiff cannot successfully plead a claim for deceptive trade practice, and this claim should be dismissed.[13]

### E.    Plaintiff's putative class action allegations should be stricken because Plaintiff cannot serve as lead plaintiff and lead counsel

      It is well settled law that a pro se plaintiff, even one who is an attorney, may not represent the interests of third parties in the class action context. Jaffe v. Capital One Bank, No. 09 CIV. 4106 (PGG), 2010 WL 691639 at *10 (S.D.N.Y. Mar. 1, 2010) (citing Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998) and Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir. 1997)). Pursuant to Fed. R. Civ. P. 23(d)(1)(D), courts may "require that the pleadings be amended to eliminate allegations about representation of absent persons." Motions to strike class

---

[13]   To the extent Plaintiff is trying to advance a claim for deceptive trade practice based upon the revenue sharing arrangement between Merrill Lynch and Clifford Chance, such a claim is also time-barred. Under New York law, a deceptive trade practice claim is subject to a three-year statute of limitations. Gaidon v. Guardian Life Ins. Co. of Am., 750 N.E.2d 1078, 1082 (N.Y. 2001). This statute of limitations accrues "when plaintiff has been injured by a deceptive act or practice violating section 349[.]" Id. at 1083 (citation omitted). Revenue sharing was disclosed by no later than August 2012, more than three years before Plaintiff filed the Amended Complaint. See Am. Compl. ¶ 129.

allegations "may be addressed prior to the certification of the class if the inquiry would not
mirror the class certification inquiry and if resolution of the motion is clear." Jaffe, 2010 WL
691639, at *10 (quoting In re Initial Pub. Offering Sec. Litig., No. 21 MC 92(SAS), 2008 WL
2050781, at *2 (S.D.N.Y. May 13, 2008)).

      Striking the class allegations is appropriate here because Plaintiff cannot serve as
both the class representative and class counsel, as the Court pointed out in its earlier dismissal
opinion.  (D.I. 21, at 18 n. 5.); See also Humphrey v. Rav Investigative & Sec. Servs. Ltd., No.
12 CIV. 3581 (NRB), 2016 WL 1049017, at *3-4  (S.D.N.Y. Mar. 11, 2016) (striking the
collective and class action allegations from complaint where pro se litigant stated his intent to
prosecute his claims, as he could not 'fairly and adequately protect the interests of a class.'
(citing Fed. R. Civ. P. 23 (a)(4)); Jaffe, 2010 WL 691639 at *10-11 (same).  A class
representative serving as class counsel creates an impermissible conflict of interest between the
class counsel's interest in obtaining fees and class members' interest in recovery.  See Jaffe,
2010 WL 691639 at *10-11 (citing 5 Moore's Federal Practice § 23.25 (3d ed. 2010) ("[A] pro
se class representative cannot adequately represent the interests of other class members.
Moreover . . . an attorney may not bring a class action pro se because too close a relationship
between the class representative and class counsel is a disqualifying conflict of interest.")).

      Here, Plaintiff named only himself as plaintiff in the Complaint, Am. Compl. ¶
35, but he also purports to represent hundreds of retirement plans and their participants.  Id. ¶¶
145, 148.  The fact that Plaintiff claims to be representing the Clifford Chance Plan as well
makes no difference; the fact remains that the same person is trying to serve as both the class
representative and class counsel.  Under Jaffe and numerous other authorities, this impermissible

conflict requires that the class allegations be struck from the Amended Complaint, to the extent any claims survive this Motion.

## V.        CONCLUSION

For the foregoing reasons, Plaintiff's claims against Capital Strategies should be dismissed with prejudice in their entirety.  In the alternative, should any claim survive this Motion, all class allegations should be stricken from the Amended Complaint.

Respectfully,

/s/  Marissa R. Parker
Marissa R. Parker
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
mparker@stradley.com
T: 215-564-8091
F: 215-564-8120
*Attorneys for Defendant Capital Strategies Investment Group*

# 2878086