UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X
CRAIG M. WALKER, On Behalf of the Clifford Chance  :
US LLP 401(k) Plan, and All Other Plans Similarly       :
Situated,                                                                                   :     No. 1:15-cv-01959 (PGG)
                                                                                                 :
                                     Plaintiff,                                          :
                                                                                                 :
              - vs. -                                                                       :
                                                                                                 :
MERRILL LYNCH & CO. INC., BANK OF AMERICA  :
CORPORATION, MERRILL LYNCH BANK & TRUST  :
FSB, CAPITAL STRATEGIES INVESTMENT GROUP  :
                                                                                                 :
                                     Defendants.                                      :
------------------------------------------------------------------------- X

# MEMORANDUM OF LAW BY DEFENDANTS
## BANK OF AMERICA CORPORATION AND BANK OF AMERICA, N.A.
## IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS

Andrew W. Stern
Cyrus E. Ansari
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel: (212) 839-5300
Fax: (212) 839-5599
astern@sidley.com
cansari@sidley.com

Anne E. Rea (*admitted pro hac vice*)
Eric S. Mattson (*admitted pro hac vice*)
SIDLEY AUSTIN LLP
One S. Dearborn Street
Chicago, Illinois 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
area@sidley.com
emattson@sidley.com

*Attorneys for Defendants Bank of America Corporation (successor by merger to Merrill Lynch & Co., Inc.) and Bank of America, N.A. (successor by merger to Merrill Lynch Bank & Trust Co., FSB)*

# TABLE OF CONTENTS

Page

Introduction ...................................................................................................................................1

Alleged Facts ................................................................................................................................2

Argument ......................................................................................................................................5

I.       Plaintiff has not stated a plausible ERISA claim. ..............................................................5

       A.       Plaintiff has not plausibly alleged that Merrill Lynch acted as a fiduciary under ERISA. ........................................................................................................5

              Collecting pre-approved fees is not a fiduciary act. ...............................................5

              Providing ministerial services is not a fiduciary act................................................7

       B.       Plaintiff has not plausibly alleged that Merrill Lynch Bank acted as a fiduciary in any relevant way. ..............................................................................10

       C.       Plaintiff provides too few facts to plead plausible state law claims. ....................11

       D.       Plaintiff may not assert a claim under a criminal statute. ....................................12

       E.       Plaintiff's ERISA claims are time-barred. ............................................................12

II.      Plaintiff cannot represent the interests of third parties. ...................................................12

Conclusion ..................................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                 **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 5, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................... 5

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
    474 F.3d 463 (7th Cir. 2007) ..................................................................................................... 6

*F.W. Webb Co. v. State St. Bank & Trust Co.*,
    No. 09-1241, 2010 WL 3219284 (S.D.N.Y. Aug. 12, 2010) ...................................................... 6

*Fannie Mae v. Olympia Mortg. Corp.*,
    No. 04 cv 4971, 2007 U.S. Dist. LEXIS 78308 (E.D.N.Y. Oct. 22, 2007) ............................... 13

*Global Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006) ...................................................................................................... 2

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
    302 F.3d 18 (2d Cir. 2002) ........................................................................................................ 5

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) ................................................................................................. 7, 8

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ....................................................................................... 1

*In re Lehman Bros. Sec. & ERISA Litig.*,
    No. 09 MD 2017, 2012 WL 6021097 (S.D.N.Y. Dec. 4, 2012) ............................................... 10

*In re WorldCom, Inc. ERISA Litig.*,
    354 F. Supp. 2d 423 (S.D.N.Y. 2005) ..................................................................................... 10

*Jaffe v. Capital One Bank*,
    No. 09 CIV 4106 (PGG), 2010 WL 691639 (S.D.N.Y. Mar. 1, 2010) ............................... 12, 13

*Ladino v. Bank of Am.*,
    861 N.Y.S.2d 683 (N.Y. App. Div. 2008) .............................................................................. 11

*Leimkuehler v. American United Life Insurance Co.*,
    713 F.3d 905 (7th Cir. 2013) ................................................................................................. 7, 8

*McCaffree Financial Corp. v. Principal Life Insurance Co.*,
    811 F.3d 998 (8th Cir. 2016) ............................................................................................ 7, 8, 10

*Morris v. Dunn*,
  No. 2:10-CV-01034, 2010 WL 5775028 (S.D. W. Va. Dec. 2, 2010), *report adopted*, 2011 WL 482836 (S.D.W. Va. Feb. 7, 2011) ............................................................12

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (N.Y. 1995) ...........................................................................................11

*Pegram v. Herdrich*,
  530 U.S. 211 (2000).................................................................................................2, 5

*Phillips v. Tobin*,
  548 F.2d 408 (2d Cir. 1976)........................................................................................13

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011).............................................................................7, 8, 10

*Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*,
  768 F.3d 284 (3d Cir. 2014)...............................................................................6, 7, 8

*Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*,
  516 F.3d 719 (8th Cir. 2008) ........................................................................................8

*Zamar v. DiLiddo*,
  No. 97-cv-32S(H), 1998 U.S. Dist. LEXIS 22300 (W.D.N.Y. Oct. 22, 1998) .........13

*Zang v. Paychex, Inc.*,
  728 F. Supp. 2d 261 (W.D.N.Y. 2010) ........................................................................6

**Statutes**

29 U.S.C. § 1002(21)(A)....................................................................................................7, 8

29 U.S.C. § 1103(a)(1)..........................................................................................................10

**Other Authorities**

29 C.F.R. § 2510.3-21(c) .......................................................................................................9

Defendants Bank of America Corporation[1] and Bank of America, N.A.[2] ("Defendants") submit this memorandum of law in support of their motion to dismiss Plaintiff's Amended Class Action Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In the alternative, they move to strike the class allegations pursuant to Fed. R. Civ. P. 23(d)(1)(D), as well as any claims that Plaintiff purports to bring on behalf of anyone other than himself.

## Introduction

The Amended Complaint represents a second attempt by a former litigation partner at Clifford Chance to state an ERISA claim for mismanagement of his former firm's 401(k) retirement plan. The Amended Complaint asserts generally the same claims that this Court has already dismissed—minus an antitrust claim, which Plaintiff has now dropped—but it now also includes admissions that make it even *more* clear that Plaintiff has no viable claim against Merrill Lynch or any related entity. Specifically, Plaintiff now admits that the practices he says constituted a breach of fiduciary duty on the part of several Merrill Lynch entities were "baked into" service agreements that were negotiated and signed by his former employer, a non-defendant. *E.g.*, Doc. 28 ¶ 22. But as this Court observed in dismissing Plaintiff's initial ERISA claim, "a service provider does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms."

---

[1] Defendant Merrill Lynch & Co., Inc. merged into Bank of America Corporation, effective October 1, 2013. *See* Merrill Lynch Corporate Disclosure Statement, Doc. 5. A non-defendant subsidiary, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), is the service provider to the Clifford Chance Plan. In addition to the other grounds for dismissal set forth in this brief, Plaintiff has alleged no basis for suing a parent company with no interactions with his former law firm's retirement plan. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417-18 (S.D.N.Y. 2011) (quoting *United States v. Bestfoods,* 524 U.S. 51, 61 (1998)).

[2] Merrill Lynch Bank & Trust Co., FSB ("Merrill Lynch Bank") merged into Bank of America, N.A. effective November 2, 2009. *See* Bank of America, N.A. Corporate Disclosure Statement, Doc. 39. Bank of America, N.A. is a subsidiary of Bank of America Corporation. *Id.*

1

Doc. 21 at 10 (quoting *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009)). Because Plaintiff's ERISA claim requires him to plausibly allege that the Defendants acted as fiduciaries when taking the action "subject to complaint," *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000), and because no such allegations appear in the Amended Complaint, his ERISA claim should again be dismissed, this time with prejudice.

Plaintiff also asserts state law claims for knowingly participating in a breach of trust and for violating N.Y. General Business Law § 349, along with, oddly, a claim for violation of a federal criminal statute. The latter claim should be dismissed because it creates no civil right of action. In addition, while this Court declined to resolve a state law claim on the merits when it addressed the initial Complaint (as it may under 28 U.S.C. § 1367(c)), the moving Defendants respectfully request that the Court address these claims on the merits and dismiss them with prejudice.

### Alleged Facts[3]

For all the ink spilled in the 48 pages of the Amended Complaint, Plaintiff is really complaining about two related items: (1) the fees related to the investment options his employer chose to include in his 401(k) plan were, in his view, too high, and (2) some of those fees were shared—"kicked back," in Plaintiff's parlance—with Merrill Lynch. This is the same basic theory of liability Plaintiff alleged in his initial complaint.

Plaintiff, an attorney, was a litigation partner at Rogers & Wells LLP, a firm that became Clifford Chance US LLP after a merger. After his departure from the firm, Plaintiff kept his

---

[3] These facts are assumed true solely for purposes of this motion. In addition, the record includes contracts (Doc. 16) that are specifically referenced in the Amended Complaint. *See* Doc. 28 ¶¶ 13-30, 50, 92, 103, 109. Courts may rely on documents integral to the complaint if plaintiff relied on "the terms and effect of [the] document in drafting the complaint." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156-57 (2d Cir. 2006).

2

money in the Clifford Chance Plan, and he remains a Plan participant today. Compl. ¶¶ 6, 34 (Doc. 1).

Two sets of agreements guided the relationships among the employer fiduciary (Clifford Chance), the Clifford Chance Plan, Merrill Lynch (the service provider), and Merrill Lynch Bank (the directed trustee). Beginning in 1997, a servicing agreement and several trust agreements controlled. *See* Doc. 28 ¶¶ 4-6. Plaintiff quotes these agreements extensively, but they are not relevant to this motion because, as Plaintiff admits, his claims stretch back only to 2009. *Id.* ¶ 146 ("The claims in this action are asserted with respect to the period six years preceding the initiation of this proceeding and continuing thereafter."). And as Plaintiff also admits, the 1997 agreements were replaced in 2008 with agreements that appear in the record. *See* Doc. 28 ¶¶ 13, 92; Stern Decl. Exs. A & B (Docs. 16-1, 16-2).

Merrill Lynch does not serve as the sponsor or named fiduciary of the Clifford Chance Plan. *See, e.g.*, Doc. 28 ¶¶ 4, 10, 41, 65. The pertinent agreement designates Clifford Chance as the "Employer," "Plan Fiduciary," "Named Administrative Fiduciary," and "Named Investment Fiduciary." Stern Decl. Ex. A at A1. Clifford Chance retained Merrill Lynch "to perform certain non-discretionary, ministerial administrative recordkeeping services" relating to the Clifford Chance Plan. *Id.* In their agreement, Merrill Lynch and Clifford Chance acknowledged that "the Plan Fiduciary, and any other fiduciary it may properly appoint (which cannot be Merrill Lynch)," would exercise fiduciary judgment and discretion in "choosing the investment options offered in the Plan." *Id.* at A2. While Plaintiff alleges that Merrill Lynch at one time acted as an investment advisor to the Clifford Chance Plan, he admits that this activity came to an end in the mid-2000s, before any time relevant to this case. Doc. 28 ¶¶ 109, 146.

Likewise, neither Merrill Lynch Bank nor any other Merrill Lynch entity acted as a fiduciary to the Clifford Chance Plan with respect to investment decisions or compensation for

3

administrative services. The Amended Complaint adds allegations against two banks that each merged into Bank of America, N.A.: Merrill Lynch Bank and Merrill Lynch Bank USA. Doc. 28 ¶¶ 16, 20, 39, 95, 104, 135. These entities were "directed trustees" responsible for holding plan assets and following directions from the employer. For example, Merrill Lynch Bank USA agreed to "accept" the employer's investments and "review, hold, manage, invest, and reinvest those assets of each Plan which are invested from time to time in the Trust and to do . . . all such other acts . . . as may be required of it under the Declaration of Trust." Stern Decl. Ex. B at C1. Merrill Lynch Bank served as a "non-discretionary directed trustee of the Trust," *id.* at M1, and agreed to "hold the Trust Fund . . . as a nondiscretionary directed trustee pursuant to the terms of this Trust Agreement." *Id.* at M2.

      Plaintiff also alleges that Merrill Lynch or Merrill Lynch Bank acted as a "service provider," "Investment Adviser," or "Trustee" and, in those capacities, received "revenue sharing" payments from mutual fund companies whose funds were offered in the Clifford Chance Plan. Doc. 28 ¶ 2-3, 7, 22. Specifically, Plaintiff alleges that "Merrill Lynch" (without specifying which entity is alleged to have done what) "receives revenue sharing payments (which amount to kickbacks) for its own benefit from these mutual funds in violation of, *inter alia*, the prohibited transaction rules of [ERISA]," Doc. 28 ¶ 3, and that "Merrill Lynch . . . earns excessive compensation and otherwise fails to act in the best interests of the retirement plans it services and their participants," Doc. 28 ¶ 52.

      In 2012, before filing this lawsuit, Plaintiff brought an administrative claim against Clifford Chance, challenging his former employer's selection of funds and the associated fees. Compl. ¶ 22. Plaintiff's claim was denied in March 2013, and his administrative appeal was denied in August 2013. Compl. ¶¶ 26-30.

Nearly two years later, Plaintiff filed this action. The Court granted Defendants' motion to dismiss on March 25, 2016 and granted Plaintiff leave to re-plead. Doc. 21. Plaintiff filed the operative Amended Complaint on May 17, 2016, adding as defendants Merrill Lynch Bank and an unrelated entity, Capital Strategies Investment Group, which allegedly advised the Clifford Chance Plan on which investment options to offer.

## Argument

### I. Plaintiff has not stated a plausible ERISA claim.

Federal pleading standards are intended to prevent a plaintiff with a "largely groundless claim" from forcing defendants into either costly discovery or a settlement of a weak claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations that are merely "consistent with" liability will not suffice. *Id.*

### A. Plaintiff has not plausibly alleged that Merrill Lynch acted as a fiduciary under ERISA.

As was the case with the initial Complaint, a threshold and dispositive issue is whether Merrill Lynch acted as a fiduciary in any relevant respect. *Pegram*, 530 U.S. at 225-26; Doc. 21 at 7. The Amended Complaint, like its predecessor, includes no facts plausibly suggesting that Merrill Lynch acted as a fiduciary with respect to the fees Plaintiff is challenging.

#### 1. Collecting pre-approved fees is not a fiduciary act.

A service provider neither acts as a fiduciary nor breaches any duty when it charges fees approved by a plan fiduciary. *See, e.g.*, *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,* 302 F.3d 18, 31 (2d Cir. 2002) (reversing finding that company's "collection of its agreed-

5

upon compensation under the Contract was a breach of its fiduciary duties"); *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 473 (7th Cir. 2007) ("Given that this [pricing] scheme was the very deal for which [plaintiff] bargained at arms' length, [defendant] owed no fiduciary duty in this regard."). The same principle applies to "revenue sharing," a well-established feature in the 401(k) industry whereby mutual fund companies compensate service providers like Merrill Lynch. *See F.W. Webb Co. v. State St. Bank & Trust Co.*, No. 09-1241, 2010 WL 3219284, at *5-7 (S.D.N.Y. Aug. 12, 2010) (holding that service provider's offering of investment options and receipt of revenue sharing did not establish fiduciary status); *Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 264, 271 (W.D.N.Y. 2010) (granting motion to dismiss because service provider was not an ERISA fiduciary).

Providing services and charging fees approved by a fiduciary is all that is alleged to have happened here. The contract between Clifford Chance and Merrill Lynch explained how Merrill Lynch would be paid for its services, including through revenue sharing from mutual fund companies. "When your plan invests in mutual funds and collective trust funds, we receive compensation from the fund provider based on that investment . . . [which] allows us to offer our services at a reasonable cost." Stern Decl. Ex. B at I1. The contract went on to explain the different fees and how Merrill Lynch would receive compensation from those fees; it also provided a sample expense ratio structure and explained how it would apply to different classes of mutual fund shares. *Id.* at I2. *See also* Doc. 28 ¶¶ 99-102. There is no hint here of fiduciary conduct. "[A] service provider owes no fiduciary duty to a plan with respect to the terms of its service agreement if the plan trustee exercised final authority in deciding whether to accept or reject those terms." *Santomenno v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 293 (3d Cir. 2014) (affirming dismissal of claims against service provider).

2.      **Providing ministerial services is not a fiduciary act.**

As this Court recognized in its order dismissing Plaintiff's initial Complaint, "The courts have consistently rejected the notion that a service provider becomes an ERISA fiduciary as a result of recommending a roster of funds." Doc. 21 at 10. Accordingly, the sorts of services Merrill Lynch allegedly provided, such as record-keeping and providing ready access to investment options, are not fiduciary acts. This principle has been universally accepted, most recently in *McCaffree Financial Corp. v. Principal Life Insurance Co.*, 811 F.3d 998, 1002-03 (8th Cir. 2016), where the Eighth Circuit affirmed the dismissal of ERISA claims against one of Merrill Lynch's competitors. The court held that the defendant "owed no duty to plan participants during its arms-length negotiations with [the employer]." *Id*. To the same effect are *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011), *Leimkuehler v. American United Life Insurance Co.*, 713 F.3d 905, 912 (7th Cir. 2013), *Santomenno*, 768 F.3d at 295, and *Hecker*, 556 F.3d at 583.

(a)     *Statutory definition.*

As in *McCaffree*, *Renfro*, *Leimkuehler*, *Santomenno*, and *Hecker*, Merrill Lynch's provision of services to the Clifford Chance Plan does not satisfy the statutory definition of a fiduciary. The statute describes a "functional" fiduciary duty, which arises where a person:

> (i) . . . exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) . . . renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) . . . has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "A person only falls within subsections (i) and (iii) if they possess final authority to make decisions for the plan or if they have control over plan assets." Doc. 21 at 8 (citing *Apogee Enters., Inc. v. State St. Bank & Tr. Co.*, No. 09 Civ. 1899(RJH), 2010 WL

3632697, at *2 (S.D.N.Y. Sept. 17, 2010)). Moreover, the control must be "exercised," not hypothetical. *Trs. of the Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 733 (8th Cir. 2008).

(b)     *Discretionary authority.*

In the service provider context, offering a large menu of investment options for use in 401(k) plans does not clear the discretionary authority hurdles in parts (i) and (iii) of the statute. Offering mutual funds and other investment options is a "product design" function, and plan sponsors like Clifford Chance are free to shop around for a menu that suits their plan's needs. *See, e.g.*, *Santomenno*, 768 F.3d at 295; *Leimkuehler*, 713 F.3d at 911; *Renfro*, 671 F.3d at 326-28; *Hecker*, 556 F.3d at 583, *McCafree*, 811 F.3d at 1003. Here, Plaintiff does not allege that Merrill Lynch chose the investment options for the Clifford Chance Plan, but instead admitted in his initial Complaint that the "Plan's Trustees or Investment Advisor" did, Compl. ¶¶ 148-49, and admitted in his Amended Complaint that starting in the mid-2000s (before the relevant time, *see* Doc. 28 ¶ 146), "Merrill Lynch stepped out of its role of selecting the specific mutual funds for a particular Plan" (*id.* ¶ 109). Thus, as this Court has held, "[t]he reasoning of *Hecker* . . . is fully applicable here." Doc. 21 at 11. This is because the employer, Clifford Chance, "has the 'final say' on which investment options would be available to Plan participants, and the fact that the [employer] discussed or negotiated this decision with Merrill Lynch does not mean that Merrill Lynch had discretionary control over the management or administration of the Plan or over its assets within the meaning of subsections (i) and (iii) of 29 U.S.C. § 1002(21)(A)." Doc. 21 at 11.

(c)     *Investment advice.*

Plaintiff also fails to plausibly allege that Merrill Lynch became a fiduciary by giving "investment advice." *See* 29 U.S.C. § 1002(21)(A)(ii). To advance this theory, Plaintiff must

8

plead facts showing that Merrill Lynch (1) "renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property," (2) "on a regular basis," (3) to the Clifford Chance Plan "pursuant to a mutual agreement, arrangement or understanding" between Merrill Lynch and the Clifford Chance Plan, (4) that "such services will serve as a primary basis for investment decisions with respect to plan assets," *and* (5) that Merrill Lynch "will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments." 29 C.F.R. § 2510.3-21(c). The Amended Complaint does not allege facts satisfying *any*, let alone *all*, of these requirements.

Plaintiff offers the rote conclusion that "Defendants are fiduciaries . . . based on . . . their provision of investment advice." Doc. 28 ¶ 157. This legal conclusion is entitled to no weight. *Iqbal*, 556 U.S. at 678. And even Plaintiff admits that "Merrill Lynch stepped out of its role of selecting the specific mutual funds for a particular Plan" long before the time relevant to this case. Doc. 28 ¶¶ 109 & 146. As this Court held, "simply offering a discrete menu of funds does not constitute investment advice." Doc. 21 at 12 (quoting *Leimkuehler*, 2012 WL 28608, at *11).

Plaintiff also says Merrill Lynch became a fiduciary by providing Plan participants with an on-line tool to help them choose a subset of the investment options Clifford Chance had chosen. Doc. 28 ¶¶ 17, 25. Critically, however, the actions "subject to complaint" (charging excessive fees and receiving revenue sharing payments) do *not* implicate the "Advice Access" tool, as Plaintiff takes issue with the entire menu of options his former employer chose—not how any given participant chose to allocate funds among those options.

9

### B. Plaintiff has not plausibly alleged that Merrill Lynch Bank acted as a fiduciary in any relevant way.

The Amended Complaint alleges that Merrill Lynch Bank, in a trust agreement, "admits that Merrill Lynch [Bank] is an ERISA Fiduciary." *See id.* at ¶¶ 22, 54, 105-06. This "admission" is a red herring. Merrill Lynch Bank "admitted" that it was a directed trustee, and hence a fiduciary under ERISA, but this role has nothing to do with the action "subject to complaint." As a result, it cannot save Plaintiff's claim. *See McCaffree*, 811 F.3d at 1002-03 (upholding dismissal of four theories of fiduciary liability against 401(k) service provider because plaintiff did not plead "a connection between any fiduciary duty [the defendant] may have owed and the excessive fees [the defendant] allegedly charged").

Directed trustees play an important but limited role in 401(k) plans; in simple terms, they hold the money. They are "subject to proper directions" from the plan fiduciary who retains them—here, Clifford Chance. 29 U.S.C. § 1103(a)(1). A directed trustee who follows the directions of the named fiduciary is "essentially immune from judicial inquiry" because "it lacks discretion, taking instructions from the plan that it is required to follow." *Renfro*, 671 F.3d at 323 (quotation omitted). As a district court in this circuit aptly put it, directed trustees have "limited responsibilities" that are "significantly narrower" than those of other fiduciaries. *In re WorldCom, Inc. ERISA Litig.*, 354 F. Supp. 2d 423, 446 (S.D.N.Y. 2005). "The choice of investment options remains in the hands of the named investment fiduciary." *Id.* at 448-49. As a corollary, directed trustees have "no duty to investigate the wisdom of those choices [by the named investment fiduciary] or any obligation to render advice regarding the choices." *Id.* at 449. *See also In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017, 2012 WL 6021097, at *2 (S.D.N.Y. Dec. 4, 2012) ("[T]he fiduciary duties of a directed trustee are extremely narrow . . . . Such a trustee has no duty to duplicate or second-guess the work of the plan fiduciaries that have discretionary authority over the management of plan assets.") (citing, among other

10

authorities, *F.W. Webb Co.*, 2010 WL 3219284, at *13; and U.S. Dep't of Labor Field Assistance Bulletin 2004–03 (Dec. 17, 2004)).

Plaintiff has not alleged that Merrill Lynch Bank failed to follow the directions of Clifford Chance or plan participants. Instead, the Amended Complaint attempts to connect Merrill Lynch Bank to allegedly excessive fees and the purported "kickback scheme." But the Amended Complaint does not plead a single fact explaining how Merrill Lynch Bank played any role in selecting the funds available to plan participants or the fees associated with them. As a result, the claims based on any "directed trustee" theory of liability must be dismissed.

### C. Plaintiff provides too few facts to plead plausible state law claims.

A claim for violation of New York General Business Law § 349 requires allegations demonstrating that Merrill Lynch engaged in consumer-oriented conduct that was "deceptive or misleading in a material way" to a "reasonable consumer," and that the plaintiff was injured because of it. *Ladino v. Bank of Am.*, 861 N.Y.S.2d 683, 686-87 (N.Y. App. Div. 2008) (dismissing § 349 claim where plaintiff alleged a "deceptive practice"); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 25-26 (N.Y. 1995) (limiting definition of "deceptive acts and practices"). For the reasons discussed above, Plaintiff has failed to plead sufficient facts to plausibly support a claim of material deception causing injury. For similar reasons, Plaintiff's threadbare allegations of knowing participation in a breach of trust, Doc. 28 ¶ 172, fail to state a claim. Whatever claims Plaintiff might have against Clifford Chance (and Merrill Lynch does not concede that Plaintiff has any viable claims against his former employer), all he has alleged against Merrill Lynch, a non-fiduciary, is ordinary commercial conduct.

### D. Plaintiff may not assert a claim under a criminal statute.

Oddly, the Amended Complaint also asserts the commission of a crime, Doc. 28 ¶¶ 3, 174, specifically violation of an anti-kickback provision (18 U.S.C. § 1954). Violating § 1954 can result in criminal penalties, but it does not provide a private right of action. *See Morris v. Dunn*, No. 2:10-CV-01034, 2010 WL 5775028, at *6 (S.D. W. Va. Dec. 2, 2010), *report adopted*, 2011 WL 482836 (S.D.W. Va. Feb. 7, 2011). Accordingly, this claim must be dismissed.

### E. Plaintiff's ERISA claims are time-barred.

Defendants incorporate by reference the statute of limitations argument by Defendant Capital Strategies Investment Group in its memorandum of law at section IV. D., Doc. 38.

## II. Plaintiff cannot represent the interests of third parties.

Under Fed. R. Civ. P. 23(d)(1)(D), courts may "require that the pleadings be amended to eliminate allegations about representation of absent persons." Motions to strike class allegations "may be addressed prior to the certification of the class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear." *Jaffe v. Capital One Bank*, No. 09 CIV 4106 (PGG), 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010) (quoting *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92(SAS), 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008).

If the case is not dismissed with prejudice, striking the class allegations is appropriate here because Plaintiff cannot serve as both the class representative and class counsel. While this Court technically did not reach this issue in its initial ruling, it noted that "*pro se* Plaintiff should be aware that a *pro se* party may not pursue class claims." Doc. 21 at 18 n.5. "It is well settled law that a *pro se* plaintiff may not represent the interests of third parties." *Jaffe*, 2010 WL 691639, at *10 (citing *Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir. 1998), and *Pridgen v. Andresen,* 113 F.3d 391, 393 (2d Cir. 1997)). A class representative serving as class counsel—as

Plaintiff seeks to do here—creates an impermissible conflict of interest between the class counsel's interest in obtaining fees and class members' interest in recovery. *See id.* at *10-11 (citing 5 Moore's Federal Practice § 23.25 (3d ed. 2010)).

Nor can Plaintiff litigate this case on behalf of other participants in the Clifford Chance Plan. Plaintiff claims to be prosecuting the case on behalf of the Clifford Chance Plan as a whole, Doc. 28 at 1, but derivative representation does not fix the *pro se* problem; it heightens it. Plaintiff seeks to represent the interests of other participants in the Clifford Chance Plan without anyone looking over his shoulder to ensure that he is fairly representing their interests. The law does not permit this. *See, e.g.*, *Phillips v. Tobin*, 548 F.2d 408, 415 (2d Cir. 1976) (*pro se* plaintiff may not bring shareholder derivative lawsuit); *Fannie Mae v. Olympia Mortg. Corp.*, No. 04 cv 4971, 2007 U.S. Dist. LEXIS 78308, at *10 (E.D.N.Y. Oct. 22, 2007) (same); *Zamar v. DiLiddo*, No. 97-cv-32S(H), 1998 U.S. Dist. LEXIS 22300, at *11-13 (W.D.N.Y. Oct. 22, 1998) (granting summary judgment to defendants because a *pro se* plaintiff cannot fairly and adequately represent the interests of shareholders in a shareholder's derivative lawsuit).

## Conclusion

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice. In the alternative, the Court should strike the class allegations and hold that the *pro se* Plaintiff here cannot pursue relief on behalf of anyone other than himself.

Dated: July 28, 2016                                    Respectfully submitted,

                                                        SIDLEY AUSTIN LLP

                                                        By: /s/ Andrew W. Stern
                                                            Andrew W. Stern
                                                            Cyrus E. Ansari
                                                            787 Seventh Avenue
                                                            New York, New York 10019
                                                            Tel: (212) 839-5300
                                                            Fax: (212) 839-5599

13

astern@sidley.com
cansari@sidley.com

Anne E. Rea (*admitted pro hac vice*)
Eric S. Mattson (*admitted pro hac vice*)
One S. Dearborn Street
Chicago, Illinois 60603
Tel: (312) 853-7000
Fax: (312) 853-7036
area@sidley.com
emattson@sidley.com

*Attorneys for Defendants Bank of America Corporation (successor by merger to Merrill Lynch & Co., Inc.) and Bank of America, N.A. (successor by merger to Merrill Lynch Bank & Trust Co., FSB)*