UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CRAIG M. WALKER, On Behalf of the 401k
Plan, Himself, and All Others Similarly
Situated,

                              Plaintiffs,

            - against -

MERRILL LYNCH & CO. INC., BANK OF
AMERICA CORPORATION, MERRILL
LYNCH BANK & TRUST FSB, and
CAPITAL STRATEGIES INVESTMENT
GROUP,

                              Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3|3| 17

**ORDER**

15 Civ. 1959 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

            In this putative class action, pro se Plaintiff Craig Walker brings claims pursuant

to (1) Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. 1001 et. seq.; (2) Section 349 of the New York General Business Law; and (3) New

York common law, for "knowing breach of trust."  (Am. Cmplt. (Dkt. No. 28) at 44-46)[1]  The

Amended Complaint alleges that Merrill Lynch & Co. Inc., Merrill Lynch Bank & Trust Co.

FSB, Bank of America Corporation, and Capital Strategies Investment Group breached their

fiduciary duties under ERISA by participating in a "revenue sharing kickback scheme" in which

participants in Plaintiff's 401(k) plan were offered high-fee actively managed mutual funds,

which paid a "revenue sharing kickback" to Merrill Lynch & Co. Inc.  (Id. ¶¶ 22-23, 88, 107)

Plaintiff also claims that Defendants' participation in this alleged scheme constitutes a deceptive

---

[1]  The page numbers of documents referenced in this Order correspond to the page numbers
designated by this District's Electronic Case Filing system.

trade practice under N.Y. Gen. Bus. Law § 349, and a "knowing breach of trust" under New York common law.  (Id. ¶¶ 172, 174-75)

On March 25, 2016, this Court granted a Rule 12(b)(6) motion to dismiss filed by the then Defendants – Merrill Lynch & Co. Inc. and Bank of America Corporation.  See Walker v. Merrill Lynch & Co. Inc., 181 F. Supp. 3d 223 (S.D.N.Y. 2016).[2]  The Court's dismissal order granted leave to amend, see id. at 236, and on May 17, 2016, Plaintiff filed the Amended Complaint, which adds Merrill Lynch Bank & Trust Co. FSB and Capital Strategies Investment Group as defendants.  (Dkt. No. 28)

All Defendants have now moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, to strike the class allegations pursuant to Fed. R. Civ. P. 23(d)(1)(D).  (Dkt. Nos. 37, 40)

## BACKGROUND[3]

### I.   FACTS

Plaintiff is a participant in the Clifford Chance 401(k) Retirement Savings Plan (the "Plan").  (Am. Cmplt. (Dkt. No. 28) ¶ 35)[4]

---

[2]  Familiarity with the March 25, 2016 order is presumed.

[3]  The facts set forth in this order are drawn from pro se Plaintiff's Amended Complaint (Dkt. No. 28) and Complaint (Dkt. No. 1), and are presumed true for purposes of resolving Defendants' motions to dismiss.  See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007); see also Sathianathan v. Smith Barney, Inc., No. 04 Civ. 7122 (DAB) (FM), 2006 WL 538152, at *13 (S.D.N.Y. Feb. 24, 2006), report and recommendation adopted as modified, 2007 WL 576097 (S.D.N.Y. Feb. 21, 2007) ("[P]ro se pleadings may be read together to determine whether a plaintiff conceivably could be entitled to relief.").

[4]  The Amended Complaint does not provide any explanation of how Plaintiff became a participant in this Plan.  In his initial complaint, however, Plaintiff asserts that between 1990 and 1999, he was a litigation partner at Rogers & Wells LLP.  (Cmplt. (Dkt. No. 1) ¶ 6)  After the firm's merger with Clifford Chance US LLP in 2000, Plaintiff worked as a litigation partner at Clifford Chance until 2003.  (Id.)  Plaintiff alleges that he participated in the firms' 401(k) plan from 1991 until 2003, "at which time [Plaintiff] was improperly terminated [as a Plan participant]."  (Id.)

Merrill Lynch & Co. Inc. ("Merrill Lynch") is a Delaware corporation headquartered in New York City, and is a wholly owned subsidiary of Bank of America Corporation. (Id. ¶¶ 35-36, 38) Merrill Lynch offers a range of financial services, including, inter alia, "capital market services, investment banking and advisory services, wealth management, [and] asset management." (Id.) Merrill Lynch "acted as a service provider" for the Plan. (Id. ¶¶ 2, 35, 39) In the mid-2000's, Merrill Lynch "stepped out of its role of selecting . . . specific mutual funds for . . . [the] Plan[,] but continued an investment adviser role with its 'Merrill Lynch Advice Access' program." (Id. ¶ 109) Merrill Lynch Advice Access ("Advice Access") "provide[s] advice directly to participants." (Id.)

Merrill Lynch Bank & Trust Co. FSB ("Merrill Trust") is also a Bank of America subsidiary, and serves as a "non-discretionary directed trustee" for the Plan. (Id. ¶¶ 36, 39, 105; Trust Agreement (Dkt. No. 16-2) M5, Sec. 6.03 at 72)

Capital Strategies Investment Group ("Capital Strategies") provides investment advice to the Plan Sponsor – Clifford Chance. (Am. Cmplt. (Dkt. No. 28) ¶ 41)

Plaintiff alleges that Merrill Lynch violated its fiduciary duty to Plan participants by participating in a "scheme" in which – together with Clifford Chance – it (1) structured the Plan to offer predominantly high-fee actively managed mutual fund investment options, and (2) collected excessively high service fees – which Plaintiff characterizes as "kickbacks" – from the mutual funds, some of which were owned by Merrill Lynch. (Id. ¶¶ 7, 22-23, 66, 88, 100, 119, 163) Plaintiff asserts that "[e]ach year[,] Merrill Lynch was taking kickbacks of hundreds of thousands of dollars," and that Clifford Chance – "the firm sponsor" – was likewise receiving large amounts of kickbacks. (Id. ¶¶ 3, 9, 41, 89-90, 127)

3

According to Plaintiff, Capital Strategies and the Advice Access program "were required to work within the [alleged] Merrill Lynch scheme and structure." (Id. ¶ 110)

Plaintiff asserts claims "with respect to the period six years preceding the initiation of this proceeding [on March 16, 2015,] and continuing thereafter" (id. ¶ 146), and seeks relief "on behalf of the Clifford Chance Plan and all other similarly situated Merrill Lynch Plans with Merrill Lynch Trusts." (Am. Cmplt. (Dkt. No. 28) ¶¶ 42, 67) According to Plaintiff, there are "thousands of 401(k) retirement plans in the United States" for which Merrill Lynch acts as the "service provider" and fiduciary. (Id. ¶ 2)

## II.    PROCEDURAL HISTORY

### A.    The March 25, 2016 Order Dismissing the Complaint

As noted above the Defendants named in the initial complaint – Merrill Lynch & Co. Inc. and Bank of America Corporation – moved to dismiss under Rule 12(b)(6), or in the alternative, to strike the class allegations. (Dkt. No. 14) On March 25, 2016, this Court granted Defendants' motion to dismiss, finding that Plaintiff had not (1) demonstrated that Defendants were ERISA fiduciaries; or (2) stated a claim under the Sherman Act. See Walker, 181 F. Supp. 3d at 233-35.

Plaintiff did not allege in the Complaint that Merrill Lynch was a named fiduciary in the applicable Plan documents. Accordingly, the Court interpreted the Complaint as contending that Merrill Lynch was a "functional fiduciary" under ERISA. Id. at 230-31. The Court noted that "[a] "functional" fiduciary duty arises where a person"

> "(i) . . . exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) . . . renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) . . . has any discretionary authority or discretionary responsibility in the administration of such plan."

4

Id. at 231 (quoting 29 U.S.C. § 1002(21)(A); citing Santomenno ex rel. John Hancock Tr. v.

John Hancock Life Ins. Co. (U.S.A.), 768 F.3d 284, 291 (3d Cir. 2014)). The Court further

noted that "'[a] person only falls within subsections (i) and (iii) if they possess final authority to

make decisions for the plan or if they have control over plan assets.'" Id. (quoting Apogee

Enters., Inc. v. State St. Bank & Tr. Co., No. 09 Civ. 1899 (RJH), 2010 WL 3632697, at *2

(S.D.N.Y. Sept. 17, 2010)). The Court then went on to analyze Plaintiff's claims under the

"discretionary authority" and "investment advice" prongs of 29 U.S.C. § 1002(21)(A)(i), (ii),

and (iii).

    With regard to Merrill Lynch's alleged discretionary authority, Plaintiff

complained that it had not included any low-fee mutual funds in the initial fund roster it

provided to the Plan. (Cmplt. (Dkt. No. 1) ¶¶ 37-42) The Court noted, however, that the

Complaint's allegations demonstrated that the Plan Trustees – and not Merrill Lynch – made the

final decision as to what mutual funds would be offered to Plan participants, and that

accordingly Plaintiff had not adequately pled that Merrill Lynch had "discretionary control"

over Plan assets:

> Although Plaintiff pleads that Merrill Lynch provided the Trustees with an initial roster
> of mutual funds, the Complaint also makes clear that "[t]he Plan's Trustees . . . would
> select from this [r]oster or [s]late the mutual funds that would be placed in the Plan's
> Menu." (Cmplt. (Dkt. No. 1) ¶¶ 148-49) Accordingly, the Trustees had the "final say"
> on which investment options would be available to Plan participants, and the fact that
> the Trustees discussed or negotiated this decision with Merrill Lynch does not mean that
> Merrill Lynch had discretionary control over the management or administration of the
> Plan or over its assets within the meaning of subsections (i) and (iii) of 29 U.S.C. §
> 1002(21)(A).

Walker, 181 F. Supp. 3d at 233.

With regard to Plaintiff's claim that Merrill Lynch had provided investment

advice to the Plan for a fee within the meaning of 29 U.S.C. § 1002(21)(A)(ii), this Court noted

that

> [i]n order to plead that a defendant is a fiduciary because it provided "investment advice
> for a fee," . . . a plaintiff must plead facts sufficient to demonstrate that
>
> > (1) the defendant provided individualized investment advice; (2) on a regular basis;
> > (3) pursuant to a mutual agreement, arrangement, or understanding that (4) the
> > advice would serve as a primary basis for the plan's investment decisions; and (5)
> > the advice was rendered for a fee.

Id. at 233-34 (quoting F.W. Webb Co. v. State St. Bank & Trust Co., No. 09 Civ. 1241 (RJH),

2010 WL 3219284, at *8 (S.D.N.Y. Aug. 12, 2010)).

This Court observed that the Complaint's "only factual allegations supporting

[the] assertion [that Merrill Lynch provided investment advice] relate to Merrill Lynch's

submission of a roster of mutual funds to the Plan trustees." Id. at 234. "'As a matter of law,

simply offering a discrete menu of funds does not constitute investment advice,'" however. Id.

(quoting Leimkuehler v. Am. United Life Ins. Co., No. 1:10 Civ. 0333 (JMS) (TAB), 2012 WL

28608, at *11 (S.D. Ind. Jan. 5, 2012), aff'd, 713 F.3d 905 (7th Cir. 2013)). This Court

concluded that Plaintiff had not pled facts demonstrating that Merrill Lynch provided

"individualized investment advice" to the Plan; that it did so "on a regular basis"; that it

provided the advice pursuant to a "mutual agreement, arrangement, or understanding"; or that

the parties understood that the advice provided by Merrill Lynch "would serve as a primary

basis for the plan's investment decisions." See id. (citing F.W. Webb Co., 2010 WL 3219284,

at *8).

With respect to Plaintiff's Sherman Act tying claim, this Court found that (1)

Plaintiff's alleged tying product was "exceptionally broad and vague"; (2) the Complaint's

6

allegations were deficient with respect to the market power element; and (3) Plaintiff had not plausibly alleged anti-competitive effects in the tied product's market. See id. at 235.

Because this Court found that Plaintiff's federal claims were deficient, it declined to exercise supplemental jurisdiction over Plaintiff's claim under Section 349 of the New York General Business Law.[5] See id. at 236.

## B.    The Amended Complaint

In dismissing the Complaint, this Court had granted leave to amend, see id., and on May 17, 2016, Plaintiff filed the Amended Complaint. (Dkt. No. 28) The Amended Complaint adds Merrill Lynch Bank & Trust Co. FSB and Capital Strategies Investment Group as Defendants, drops the Sherman Act claim, and adds a New York common law claim for "knowing breach of trust."[6] As to ERISA, the Amended Complaint generally repeats the same allegations found in the Complaint, including that Defendants participated in a "scheme" to offer predominately high-fee funds to the Plan, and collected kickbacks from mutual funds in violation of ERISA. (Am. Cmplt. (Dkt. No. 28) ¶¶ 22-23, 66, 88, 163)

Defendants have moved to dismiss the Amended Complaint under Rule 12(b)(6), arguing, inter alia, that (1) Plaintiff has still not demonstrated that Defendants are fiduciaries within the meaning of ERISA; (2) Plaintiff's ERISA claims are time-barred; (3) Plaintiff has not

---

[5] Because the Complaint did not state a federal claim, and was dismissed on that basis, "this Court [did] not reach Defendants' motion to strike the class allegations." Id. at 236 n.5. This Court advised pro se Plaintiff, however, that he "should be aware that a pro se party may not pursue class claims." Id. (citing Jaffe v. Capital One Bank, No. 09 Civ. 4106 (PGG), 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010) ("It is well settled law that a pro se plaintiff may not represent the interests of third parties. Thus, a pro se plaintiff may not bring an action in which he will serve as both class representative and class counsel." (citations omitted)).

[6] The Amended Complaint also purports to base a cause of action on Defendants' alleged violation of 18 U.S.C. § 1954, a criminal statute. (See Am. Cmplt. (Dkt. No. 28) at 45) As discussed below, any such claim will be dismissed, because there is no private right of action under 18 U.S.C. § 1954.

7

pled a viable claim for knowing participation in a breach of fiduciary duty; and (4) Plaintiff may not assert a claim under a criminal statute. Defendants again argue, in the alternative, that Plaintiff's class allegations must be struck, because Plaintiff cannot serve as both class counsel and class representative. (Notice of Motion (Dkt. Nos. 37, 40); Def. Brs. (Dkt. Nos. 38, 41, 47-48))

## DISCUSSION

## I.    RULE 12(b)(6) STANDARD

A Rule 12(b)(6) motion challenges the legal sufficiency of the claims asserted in a complaint. "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). These factual allegations must be "sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint[,]" Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

8

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff['s] . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citation omitted).

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (citing Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)); see Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 145-46 (2d Cir. 2002) ("When considering motions to dismiss a pro se complaint such as this, 'courts must construe [the complaint] broadly. . . .'" (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000))). "However, although pro se filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)[,] . . . a pro se complaint must still 'plead sufficient facts to state a claim to relief that is plausible on its face.'" Wilder v. United States Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (quoting Mancuso v. Hynes, 379 F. App'x 60, 61 (2d Cir. 2010)). Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact.'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010), aff'd, 402 F. App'x 563 (2d Cir. 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("'[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish entitlement to relief].'") (quoting Iqbal, 556 U.S. at 678).

9

## II.    ERISA CLAIM

Plaintiff claims that

Defendants are fiduciaries of the Plan[] under ERISA § 3(21)(A), 29 U.S.C. §
1002(21)(a) . . . based on their discretion, authority and/or control with respect to the
administration, management and/or disposition of the Plan[] and [its] assets, and their
provision of investment advice for a fee or other compensation[,] . . . and [based on
their] authority and responsibility with respect to the administration and management of
the Plan[] and [its] retirement assets.

(Am. Cmplt. (Dkt. No. 28) ¶ 157)

According to Plaintiff, Merrill Lynch is a Plan fiduciary because – through its

"Advice Access" program – it provided investment advice to Plan participants. (Id. ¶¶ 7, 17,

25-26, 96, 109) Plaintiff also claims that Merrill Lynch had fiduciary duties as a service

provider, and asserts that the Trust Agreement's designation of Merrill Trust as a "non-

discretionary directed trustee" is a "falsehood," because the "kickback scheme" was "baked

into" the terms of the Trust Agreement. (Id. ¶¶ 22, 106)

As to Capital Strategies, Plaintiff claims that it was a "co-fiduciary of the Plan

and provide[d] investment advice to the Plan Sponsor." (Id. ¶ 41; see Pltf. Opp. Br. (Dkt. No.

46) at 9 n.1)

Defendants contend that Plaintiff's ERISA claim must be dismissed because,

inter alia, Plaintiff has not plausibly alleged that the Defendants acted as fiduciaries under

ERISA. (See Merrill Lynch Br. (Dkt. No. 41) at 9, 16; Capital Strategies Br. (Dkt. No. 38) at

13, 24) Merrill Lynch claims that it provided only ministerial services to the Plan, and asserts

that "[c]ollecting pre-approved fees is not a fiduciary act." (Merrill Lynch Br. (Dkt. No. 41) at

5-7) Capital Strategies argues that Plaintiff has not pled facts suggesting that it harmed the Plan

in any way, and notes that the Amended Complaint pleads that Capital Strategies recommended

to the Plan that it offer "the lowest cost alternative in the index space," and that "the Plan . . .

10

move forward with a fund that does not share any revenue." (Capital Strategies Br. (Dkt. No.

38) at 11, 23 (citing Am. Cmplt. (Dkt. No. 28) ¶ 115))

## A.    Law Applicable to Fiduciary Determination

Under Section 409 of ERISA,

[a]ny person who is a fiduciary with respect to a plan who breaches any of the
responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be
personally liable to make good to such plan any losses to the plan resulting from
each such breach, and to restore to such plan any profits of such fiduciary which
have been made through use of assets of the plan by the fiduciary, and shall be
subject to such other equitable or remedial relief as the court may deem
appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must

allege facts which, if true, would show that the defendant acted as a fiduciary, breached its

fiduciary duty, and thereby caused a loss to the plan at issue." Pension Benefit Guar. Corp. ex

rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705,

730 (2d Cir. 2013) (citing 29 U.S.C. § 1109(a); Pegram v. Herdrich, 530 U.S. 211, 225-26

(2000)).

"'In every case charging breach of ERISA fiduciary duty . . . the threshold

question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary

function) when taking the action subject to complaint.'" Coulter v. Morgan Stanley & Co. Inc.,

753 F.3d 361, 366 (2d Cir. 2014) (alterations in original) (quoting Pegram, 530 U.S. at 226).

ERISA provides that a person is a fiduciary to a plan if the plan identifies them as such. See 29

U.S.C. § 1102(a). However, a person or entity may also be a fiduciary under ERISA if that

person or entity acts "in the capacity of manager, administrator, or financial adviser to a 'plan,'"

11

Pegram, 530 U.S. at 222, thereby becoming a "functional fiduciary." Santomenno, 768 F.3d at

295. As discussed above, a "functional" fiduciary duty arises where a person

> (i) . . . exercises any discretionary authority or discretionary control respecting
> management of such plan or exercises any authority or control respecting
> management or disposition of its assets, (ii) . . . renders investment advice for a
> fee or other compensation, direct or indirect, with respect to any moneys or other
> property of such plan, or has any authority or responsibility to do so, or (iii) . . .
> has any discretionary authority or discretionary responsibility in the
> administration of such plan.

29 U.S.C. § 1002(21)(A); see also Santomenno, 768 F.3d at 291.

As this Court noted in dismissing the Complaint, "'[a] person only falls within

subsections (i) and (iii) if they possess final authority to make decisions for the plan or if they

have control over plan assets.'" Walker, 181 F. Supp. 3d at 231 (quoting Apogee Enters., Inc.,

2010 WL 3632697, at *2).

As to subsection (ii) of 29 U.S.C. § 1002(21)(A), the U.S. Department of Labor

has provided the following guidelines for determining whether a service provider is an

investment advice fiduciary:

> (c) Investment advice.
>
> > (1) A person shall be deemed to be rendering "investment advice" to an
> > employee benefit plan . . . only if:
> >
> > > (i) Such person renders advice to the plan as to the value of
> > > securities or other property, or makes recommendation as to the
> > > advisability of investing in, purchasing, or selling securities or
> > > other property; and
> > >
> > > (ii) Such person either directly or indirectly (e.g., through or
> > > together with any affiliate) –
> > >
> > > > (A) Has discretionary authority or control, whether or not
> > > > pursuant to agreement, arrangement or understanding, with
> > > > respect to purchasing or selling securities or other property
> > > > for the plan; or

12

> (B) Renders any advice described in paragraph (c)(1)(i) of
> this section on a regular basis to the plan pursuant to a
> mutual agreement, arrangement or understanding, written
> or otherwise, between such person and the plan or a
> fiduciary with respect to the plan, that such services will
> serve as a primary basis for investment decisions with
> respect to plan assets, and that such person will render
> individualized investment advice to the plan based on the
> particular needs of the plan regarding such matters as,
> among other things, investment policies or strategy, overall
> portfolio composition, or diversification of plan
> investments.

29 C.F.R. § 2510.3-21(c).[7]

Accordingly, and as noted above, in order

> to plead that a defendant is a fiduciary because it provided "investment advice for
> a fee," a plaintiff must plead that (1) the defendant provided individualized
> investment advice; (2) on a regular basis; (3) pursuant to a mutual agreement,
> arrangement, or understanding that (4) the advice would serve as a primary basis
> for the plan's investment decisions; and (5) the advice was rendered for a fee.

F.W. Webb Co., 2010 WL 3219284, at *8.

## B.    Analysis

### 1.    Merrill Lynch Defendants

#### (a)    Investment Advice

The Amended Complaint alleges that "as Investment Adviser, [Merrill Lynch]

put [two] proprietary Collective Trusts in the [Clifford Chance] Plan, as the only Stable Value

and Equity Index offerings[,] pursuant to an agreement, arrangement or understanding that they

would be the only [Plan] offerings of that type. This excluded low fee passively managed index

funds."[8]  (Am. Cmplt. (Dkt. No. 28) ¶ 8)

---

[7] The U.S. Department of Labor has revised the definition of "fiduciary" set forth in 29 C.F.R.
§ 2510.3-21, but the text set forth above remains in effect through April 2017. See 29 C.F.R. §
2510.3–21(j).

[8] The Amended Complaint defines the term "Collective Trust" as

As this Court explained in previously dismissing Plaintiff's action, however,

courts have consistently rejected the notion that a service provider becomes an ERISA fiduciary

as a result of recommending a roster of funds to a plan's trustees. See Walker, 181 F. Supp. 3d

at 232. Moreover, the Amended Complaint pleads that "in the mid-200[0]s," "Merrill Lynch

stepped out of its role of selecting the specific mutual funds for a particular Plan." (Am. Cmplt.

(Dkt. No. 28) ¶ 109) Given that this action was filed in 2015, and that Plaintiff pleads that "the

claims in this action are asserted with respect to the period six years preceding the initiation of

this proceeding and continuing thereafter" (see id. ¶ 146), Plaintiff's complaints about Merrill

Lynch's alleged selection of mutual funds prior to the "mid-200[0]s" is irrelevant.

Plaintiff also contends that Merrill Lynch "provided advice directly to

participants" through the Merrill Lynch Advice Access program. (Id. ¶ 109) In the agreement

concerning this program, Merrill Lynch agreed to provide Plan participants

> with an opportunity to obtain advice regarding savings rates, retirement age, potential
> retirement incomes, and asset allocation and investment recommendations relating to
> assets held under the Plan. . . .

(Merrill Lynch Advice Access Agreement (Dkt. No. 16-2) E1 at 20) Under the Advice Access

Agreement, "an independent Financial Expert . . . Ibbotson Associates, Inc." would provide

investment advice to Plan participants. The point of the Advice Access program was to help

---

an instrument by which a trustee holds the assets of many company traded securities [or]
bonds under one trust instrument.

. . . Merrill Lynch had two such proprietary trusts – the Retirement Preservation Collective
Trust (Stable Value Fund) and the Equity Index Collective Trust. . . . [A]s part of Merrill
Lynch's scheme, these Collective Trusts were place in the Plan[] with the proviso [that] they
would be the only Stable Value Fund and Equity Index Fund.

(Am. Cmplt. (Dkt. No. 28) ¶¶ 55-56)

14

Plan participants in deciding how to allocate their money among the various investment options offered under the Plan.

Plaintiff's central claim in this lawsuit has nothing to do with advice Merrill Lynch provided to individual Plan participants, however. See Coulter, 753 F.3d at 366 ("'the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint'") (alterations in original) (quoting Pegram, 530 U.S. at 226). Plaintiff's claim under ERISA is that Defendants violated their fiduciary duty to the Plan by entering into a corrupt agreement with Clifford Chance in which – allegedly in exchange for kickbacks from mutual funds – both Defendants and the firm sponsor agreed to offer high-fee actively managed mutual funds as investment options to Plan participants, rather than low-fee index funds. (Am. Cmplt. (Dkt. No. 28) ¶¶ 22-23, 64-67, 88, 107, 163) In short, Plaintiff's complaint about excessive fees and kickbacks is entirely unrelated to his allegation that Merrill Lynch provided investment advice to individual Plan participants. See McCaffree Fin. Corp. v. Principal Life Ins. Co., 811 F.3d 998, 1005 (8th Cir. 2016) (affirming dismissal where plaintiff "failed to establish a connection between its excessive fee allegations and any post-contractual fiduciary duty [defendant] may have owed to plan participants.").

Moreover, the Merrill Lynch Advice Access Agreement states that "Merrill Lynch shall not be the fiduciary responsible for the . . ."

selection of the investment options available under the Plan and the Employer acknowledges that Merrill Lynch's services hereunder do not constitute approval or endorsement by Merrill Lynch of any investment options made available as alternatives under the Plan.

(Merrill Lynch Advice Access Agreement (Dkt. No. 16-2) E2 at 21)

15

In sum, the Advice Access Agreement explicitly provides that Merrill Lynch is not a fiduciary for purposes of the Plan's investment options, which would be the subject of advice provided to Plan participants pursuant to the Advice Access Agreement.

The Amended Complaint does not plausibly allege that Merrill Lynch is an investment advice fiduciary within the meaning of subsection (ii) of 29 U.S.C. § 1002(21)(A).

### (b)   Discretionary Authority

The Amended Complaint alleges that Merrill Lynch, as the Plan's "service provider" (see Am. Cmplt. (Dkt. No. 28) ¶¶ 2, 35, 39), violated its fiduciary duty to Plan participants by (1) populating the Plan's investment options with predominantly high-fee actively managed mutual funds, and (2) collecting kickbacks from mutual fund companies in exchange for selecting their inappropriate high-fee funds. (See id. ¶¶ 22-23, 66, 88, 163) While Plaintiff alleges that Merrill Lynch "put this scheme into effect" (id. ¶¶ 7, 9), the Amended Complaint nowhere alleges that Merrill Lynch had the final say as to the mutual fund investments that would be offered to Plan participants. To the contrary, the Amended Complaint and the 2008 Trust Agreement on which it relies (see, e.g., id. ¶¶ 5-6, 20-21, 57, 104-05) make clear that Merrill Lynch did not have final authority as to what investment options would be made available to Plan participants.

The 2008 Trust Agreement states that "any decision to change or substitute Plan investment options will be made by each Employer or Employer's Designee, rather than Merrill Lynch or any of its affiliates." (2008 Trust Agreement (Dkt. No. 16-2) F9 at 33) Moreover, the Amended Complaint repeatedly makes reference to Clifford Chance's selection of funds. (See Am. Cmplt. (Dkt. No. 28) ¶ 114 ("As a result [of the discontinuance of the Merrill Lynch Equity Index Trust], Clifford Chance US LLP has selected a new investment choice to replace

16

[it]."); id. ¶ 132 ("Following a recent review, Clifford Chance US LLP will make several investment menu and share class changes on August 14, 2015."))

As this Court noted in its March 25, 2016 decision dismissing the Complaint, see Walker, 181 F. Supp. 3d at 232, there is ample law holding that "[m]erely 'playing a role' [in a plan's selection of investment options] or furnishing professional advice [about investment options] is not enough to transform a company into a fiduciary." Hecker v. Deere & Co., 556 F.3d 575, 584 (7th Cir. 2009); see id. at 583 (finding that Fidelity Trust was not a fiduciary where the employer sponsor, not Fidelity Trust, had "the final say on which investment options w[ould] be included. The fact that [the employer sponsor] may have discussed this decision, or negotiated about it, with Fidelity Trust does not mean that Fidelity Trust had discretion to select the funds for the Plans."); see also McCaffree, 811 F.3d at 1003 (rejecting plaintiff's claim that defendant's selection of the "initial investment menu constituted both an exercise of discretionary authority over plan management under 29 U.S.C. § 1002(21)(A)(i) and plan administration under (A)(iii)"); Santomenno, 768 F.3d at 288-89, 293-95 (rejecting plaintiffs' claim that John Hancock exercised discretionary authority over ERISA plan where John Hancock "selected the investment options to be included in the Big Menu [presented to the plan trustees]," but "the trustees selected which investment options to offer to their Plan participants, known as the 'Small Menu'"); Leimkuehler v. Am. United Life Ins. Co., 713 F.3d 905, 908-11 (7th Cir. 2013) (plaintiff trustee objected to defendant's undisclosed "revenue-sharing" arrangements with mutual funds, claiming that defendant had breached its fiduciary duty; defendant "selected a 'menu' of mutual funds and presented this menu to [the 401(k) plan's trustee]"; reaffirming Hecker and holding that the "act of selecting which funds will be included in a particular 401(k) investment product, without more, does not give rise to a fiduciary

17

responsibility"); F.W. Webb Co., 2010 WL 3219284, at *6 ("defendants' role here in establishing the 'big menu' bears too tenuous a connection to the eventual disposition of plan assets to constitute 'authority or control' within the meaning of the statute"); Zang & others similarly situated v. Paychex, Inc., 728 F. Supp. 2d 261, 270 (W.D.N.Y. 2010) ("Plaintiff's allegation that Paychex controlled which mutual funds to make available to the Plan does not support its claim that Paychex is a fiduciary").

Although all of this case law is set out in this Court's decision dismissing the Complaint, see Walker, 181 F. Supp. 3d at 232-33, the Amended Complaint merely repeats the same basic allegations already rejected by this Court as insufficient to demonstrate that Merrill Lynch had "discretionary authority" over Plan assets or administration such that it is a fiduciary under 29 U.S.C. § 1002(21)(A)(i) or (ii). As this Court has already stated, see id., allegations that Merrill Lynch participated in a "scheme" to foist high-fee mutual funds on Plan participants is not sufficient to demonstrate that it had "discretionary authority" over Plan assets or administration.[9] See Santomenno, 768 F.3d at 299-300 (dismissing ERISA claim against service provider where plaintiffs had not demonstrated that defendant was a fiduciary under Section 1002(21)(A)).

Plaintiff also contends that Merrill Lynch is a fiduciary because it has the power to set its own compensation. (Am. Cmplt. (Dkt. No. 28) at ¶ 51) As this Court stated in dismissing the Complaint, however, "a service provider does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and

---

[9] Braden v. Wal-Mart Stores, Inc., 588 F.3d 585 (8th Cir. 2009), cited by Plaintiff (see Pltf. Br. (Dkt. No. 42) at 12), is not to the contrary. Braden involved claims against Wal-Mart – an employee retirement plan sponsor – and various Wal-Mart executives involved in the management of the plan.

18

approval of those terms." Walker, 181 F. Supp. 3d at 232 (quoting Hecker, 556 F.3d at 583

(citing Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc., 474 F.3d 463 (7th Cir.

2007); Schulist v. Blue Cross of Iowa, 717 F.2d 1127 (7th Cir. 1983))). Here, the plan

agreements and disclosures demonstrate that the compensation was negotiated and agreed to by

Clifford Chance. (See Am. Cmplt. (Dkt. No. 28) ¶¶ 29, 129 ("The Plan Sponsor and service

provider have agreed upon 0.1150% of Plan Assets."))

The Amended Complaint does not plead facts that plausibly allege that Merrill

Lynch is a fiduciary within the meaning of subsections (i) and (iii) of 29 U.S.C. § 1002(21)(A).

#### (c)     **Status as a Non-Discretionary Directed Trustee**

The Trust Agreement's reference to Merrill Lynch as a "fiduciary" in its capacity

as a "non-discretionary directed trustee" does not change the analysis.

Section 6.03 of the Trust Agreement provides:

> The Trustee [Merrill Trust] acknowledges its status as a 'fiduciary' of the Plan within the
> meaning of ERISA, in its capacity as a non-discretionary directed trustee.

(Trust Agreement (Dkt. No. 16-2) M5, Sec. 6.03 at 72; see Am. Cmplt. (Dkt. No. 28) ¶ 105)

Plaintiff states that "[t]his provision admits that Merrill Lynch is an ERISA

Fiduciary. But the claim [that] the Trust[ee] is a non-discretionary directed trustee is a

falsehood because the kickback scheme to structure the Plans with high fee actively managed

funds was baked into the Trust Agreement." (Am. Cmplt. (Dkt. No. 28) ¶¶ 22, 106)

Merrill Trust concedes that it was a "directed trustee, and hence a fiduciary under

ERISA," but argues that "this role has nothing to do with the action 'subject to complaint.'"

(Merrill Lynch Br. (Dkt. No. 41) at 14 (citing McCaffree, 811 F.3d at 1002-03 (upholding

dismissal because plaintiff did not plead "a connection between any fiduciary duty [the

defendant] may have owed and the excessive fees [the defendant] allegedly charged."))

19

A "directed trustee" plays a limited role in a 401(k) plan.  Here, the Trust

Agreement provides that

> [t]he Trustee shall hold the Trust Fund, without distinction between principal and
> income, as a nondiscretionary directed trustee pursuant to the terms of this Trust
> Agreement.  Assets of the Trust may be held in an account maintained with an affiliate
> of the Trustee or such other financial institution as the Trustee considers appropriate.

(Trust Agreement (Dkt. No. 16-2) M2, Sec. 3.02 at 69)  Accordingly, as a "nondiscretionary

directed trustee," Merrill Lynch holds the assets of the Plan.

"[A] directed trustee is essentially 'immune from judicial inquiry' because it

lacks discretion, taking instructions from the plan that it is required to follow."  Renfro v.

Unisys Corp., 671 F.3d 314, 322-23 (3d Cir. 2011) (rejecting argument that Fidelity's status as a

"directed trustee" made it a fiduciary for purposes of claim premised on "selecting and retaining

investment options in the . . . plan") (citing Moench v. Robertson, 62 F.3d 553, 571 (3d Cir.

1995)).  "[T]he fiduciary duties of a directed trustee are extremely narrow.  They are . . .

significantly narrower than the duties generally ascribed to a discretionary trustee under

common law trust principles.  Such a trustee has no duty to duplicate or second-guess the work

of the plan fiduciaries that have discretionary authority over the management of plan assets.  Its

liability is limited to instances in which it fails to follow such proper directions or it complies

with directions that are improper, or contrary to the Plan or ERISA."  In re Lehman Bros. Sec.

& ERISA Litig., No. 09 MD 2017 (LAK), 2012 WL 6021097, at *2 (S.D.N.Y. Dec. 4, 2012)

(internal quotations and citations omitted).  In short, "[t]he choice of investment options

remains in the hands of the named investment fiduciary.  A directed trustee has no duty to

investigate the wisdom of those choices or any obligation to render advice regarding the

choices."  In re WorldCom, Inc. ERISA Litig., 354 F. Supp. 2d 423, 449 (S.D.N.Y. 2005).

Here, Plaintiff has not alleged that Merrill Lynch failed to follow the direction of Clifford Chance, nor has Plaintiff pled facts demonstrating that Merrill Lynch's duties as a directed trustee have any connection to its alleged role in the selection of high-fee mutual funds as investment options for Plan participants. Put simply, Merrill Lynch's role as "non-discretionary directed trustee" has nothing to do with the conduct that is the subject of this action.

\*       \*       \*       \*

Because the Amended Complaint does not plead facts that plausibly demonstrate that Merrill Lynch is a fiduciary under subsections (i), (ii), or (iii) of 29 U.S.C. § 1002(21)(A), Plaintiff's ERISA claim against the Merrill Lynch Defendants will be dismissed. See Santomenno, 768 F.3d at 299-300 (dismissing ERISA claim against service provider where plaintiffs had not demonstrated that defendant was a fiduciary under Section 1002(21)(A)).

## 2.   **Capital Strategies**

As discussed above, a party may be a fiduciary under ERISA where it has provided "investment advice [to an ERISA plan] for a fee" within the meaning of subsection (ii) of 29 U.S.C. § 1002(21)(A). A plaintiff making such an assertion must plead facts sufficient to demonstrate that

> (1) the defendant provided individualized investment advice; (2) on a regular basis; (3) pursuant to a mutual agreement, arrangement, or understanding that (4) the advice would serve as a primary basis for the plan's investment decisions; and (5) the advice was rendered for a fee.

F.W. Webb Co., 2010 WL 3219284, at \*8.

Here, the Amended Complaint pleads almost no facts concerning Capital Strategies, and those allegations that do address this defendant are conclusory and suggest, at

21

best, that Capital Strategies had knowledge of Merrill Lynch's alleged improper scheme and

worked to lower the fees that Merrill Lynch would receive:

> 41.　. . . Cap[ital] Strategies worked within the Merrill Lynch scheme alleged below and was involved in the negotiations of the amount Merrill Lynch would receive from the revenue sharing kickbacks.
>
> . . . .
>
> 136.　Cap[ital] Strategies did the fund analysis and fund selection for a period of the class period. The claims herein do not focus on the specific fund selection, except that all selections were made within the parameters of the Merrill [Lynch] scheme. Accordingly, the Cap[ital] Strategies selections consisted of high-fee actively managed funds that would pay a revenue sharing kickback to Merrill Lynch at an excessive level.
>
> 137.　Cap[ital] Strategies knew that low fee passively managed index funds were being excluded from the Plan Menu as a result of the Merrill [Lynch] scheme.
>
> 138.　Cap[ital] Strategies participated in the negotiations with respect to the level of those revenue sharing kickbacks to Merrill Lynch. Cap[ital] Strategies knew the levels were excessive and participated in getting those levels lowered.

(Am. Cmplt. (Dkt. No. 28) ¶¶ 41, 136-38; see also ¶ 138 ("Cap[ital] Strategies . . . participated

in getting [the revenue sharing payment] levels lowered."); id. ¶ 115 ("Cap[ital] Strategies

recommended replacing the Merrill Equity Index Trust with the Vanguard Total Stock Market

Index"))

　　　　　These vague allegations are not sufficient to plausibly allege an ERISA claim

against Capital Strategies. Plaintiff has not pled facts demonstrating that Capital Strategies

provided "individualized investment advice" to the Plan; "on a regular basis"; "for a fee";

pursuant to a "mutual agreement, arrangement, or understanding"; or that the parties understood

that the advice provided by Capital Strategies "would serve as a primary basis for the plan's

investment decisions." See F.W. Webb Co., 2010 WL 3219284, at *8.

22

In any event, to the extent that Plaintiff's ERISA claim against Capital Strategies is premised on its role in the Plan's selection of investment options, that claim fails for reasons explained above – "[a]s a matter of law, simply offering a discrete menu of funds does not constitute investment advice." Leimkuehler, 2012 WL 28608, at *11; see also Zang, 728 F. Supp. 2d at 270-71.

Given Plaintiff's failure to plead facts demonstrating that Capital Strategies is a fiduciary under subsection (ii) of 29 U.S.C. § 1002(21)(A), the ERISA claim against Capital Strategies will be dismissed.

## III.   STATE LAW CLAIMS

Defendants contend that Plaintiff's General Business Law Section 349 claim is both completely pre-empted by ERISA (see Capital Strategies Br. (Dkt. No. 38) at 26) and inadequately pled. (See Merrill Lynch Br. (Dkt. No. 41) at 15) ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C § 1144(a). However, "ERISA bars only state law claims against fiduciaries; state law claims against non-fiduciaries escape preemption." United Teamster Fund v. MagnaCare Admin. Servs., LLC, 39 F. Supp. 3d 461, 472 (S.D.N.Y. 2014) (citing Burger v. Empire Blue Cross & Blue Shield, No. 99 Civ. 4366 (LMM), 2000 WL 1425101, at *2 (S.D.N.Y. Sept. 27, 2000)). Because the Amended Complaint does not plead facts demonstrating that Merrill Lynch or Capital Strategies are fiduciaries, Plaintiff's Section 349 claim is not pre-empted by ERISA.

Under 28 U.S.C. § 1367(c), however, "a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." Schaefer v. Town of Victor, 457 F.3d 188, 210 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "[W]hen all federal claims are eliminated in the early stages

23

of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice." Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 103 (2d Cir. 1998) (emphasis omitted) (citing Carnegie-Mellon Univ., 484 U.S. at 350).

There is no reason to deviate from that rule here. Accordingly, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and those claims will be dismissed without prejudice.[10]

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss the Amended Complaint are granted. Plaintiff's federal claims are dismissed with prejudice. See Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (leave to amend may properly be denied in cases of "'repeated failure to cure deficiencies by amendments previously allowed'" and where amendment would be futile (quoting Foman v. Davis, 371 U.S. 178, 182 (1962))).[11] Plaintiff's state law claims are dismissed without prejudice. Defendants' motions to strike the class allegations are denied as moot. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 37, 40) and to close this case.

Dated: New York, New York          SO ORDERED.
       March 31, 2017

Paul G. Gardephe
United States District Judge

---

[10] Count Three of the Amended Complaint appears to assert a claim under 18 U.S.C. § 1954, a criminal statute that addresses bribery in the context of an ERISA plan. Because this statute does not provide Plaintiff with a private right of action, this claim will be dismissed.
[11] Plaintiff's Amended Complaint does not address, much less cure, the deficiencies this Court explained in its previous order of dismissal. Accordingly – based on the current record – there is no reason to believe that further amendment would be anything other than futile.

24